Argued October 3, reversed December 30, 1966

# EVANS PRODUCTS COMPANY *v.*
# JORGENSEN ET AL

421 P. 2d 978

*William M. McAllister,* Portland, argued the cause for appellant. With him on the briefs was Manley B. Strayer, Portland.

*John W. Whitty,* Coos Bay, argued the cause for

respondents. With him on the brief were McKeown, Newhouse & Johansen, Coos Bay.

Before PERRY, Presiding Justice, and SLOAN, O'CON-NELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

DENECKE, J.

This suit involves a question of priority under the Uniform Commercial Code (UCC) between a secured party with a "floating lien" and a supplier of raw materials to the debtor.

Coos Plywood manufactures plywood from veneer. Evans Products and Coos Plywood entered into a security agreement in 1963 whereby Evans was the secured party and Coos the debtor. ORS 79.1050(1). The security agreement gave Evans "a security interest in Coos' inventory as follows: All green and dry veneer, work in progress, and finished plywood now owned and all similar goods hereafter acquired, including their product, and proceeds." Evans made loans and extended credits to Coos which were secured by the provisions of the security agreement.

ORS 79.2040(3) permits the attachment of a security interest in after-acquired property with exceptions not here relevant. The UCC, as initially adopted in Oregon, did not permit a security interest to attach to inventories under an after-acquired property clause. This was changed in 1963. Oregon Laws 1963, ch 402, § 5, p 618.

The defendant partnership manufactured and sold veneer which is the basic raw material for the manufacture of plywood. Through defendants' agent, Coos ordered three truck loads of veneer. The order was filled by the delivery to Coos of two truck loads on

July second and the third load on the afternoon of July sixth. A tally sheet was made at the time the trucks were loaded. After delivery the tally sheet was brought to defendants' office, the amount owing was computed, entered in defendants' books, and an invoice prepared. On July eighth defendants' employee took the invoice to Coos for the purpose of receiving payment. It is not certain at this time whether the veneer was still in Coos' veneer inventory or being processed into plywood. Coos told defendants' employee it had no funds, but offered to pay with plywood. The employee went back and returned with one of defendant partners who accepted the plywood and had it removed to defendants' plant.

Evans claims a security interest in that plywood and brought this suit to foreclose its lien against such plywood and for a personal judgment against defendants.

It is defendants' theory of the case that this transaction constituted what would have been known in pre-UCC law as a cash sale. "It is further defendants' theory that if the transaction is viewed by the court as a cash sale, then the veneer did not become a part of Coos' inventory until it was actually paid for."

Prior to the adoption of the UCC we had held that a seller could retain title until the purchase price was paid. *Weyerhaeuser Co. v. First Nat. Bank,* 150 Or 172, 38 P2d 48, 43 P2d 1078 (1935); *Keegan v. Lenzie,* 171 Or 194, 135 P2d 717 (1943).

Under the UCC, "title" is not the talisman. ORS 72.4010, a part of the sales portion of the UCC, states: "Each provision of ORS 72.1010 to 72.7250 with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the pro-

vision refers to such title." Comment 1 to such section, states: "ORS 72.1010 to 72.7250 deals with the issues between seller and buyer in terms of step by step performance or nonperformance under the contract for sale and not in terms of whether or not 'title' to the goods has passed."

■ Because of the passage of the UCC the above-cited cases are no longer applicable.[1]

■ In order for Evans to secure a security interest in the veneer delivered by defendants to Coos, there must be an agreement that it attach, that value be given, and "the debtor [Coos] has rights in the collateral." ORS 79.2040(1). The first two conditions are clearly satisfied. On the issue of whether "the debtor has rights in the collateral [the veneer]," we look to the earlier provision of the UCC. ORS 71.2010(37) provides: "The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer is limited in effect to a reservation of a 'security interest.'" ORS 72.4010(1) also states this proposition.

■ In the present case there was delivery to the buyer "Coos" and the only interest that could be retained by the defendants was a "security interest." Coos had possession of the veneer which was delivered pursuant to contract of sale. Under these circumstances Coos had "rights" in the collateral, the veneer; therefore, Evans' security interest attached to the veneer when it was delivered to Coos.[2] Cf. ORS 79.2040

---

[1] Comment 2 to ORS 72.4030 states: "The principle is extended in subsection (3) to fit with the abolition of the old law of 'cash sale' by subsection (1)(c)."

[2] Gilmore believes a debtor having a "special property interest" in goods pursuant to ORS 72.5010 has "rights" in such goods as collateral. 1 Gilmore, Security Interests in Personal Property, p 351 (1965).

(3) and Comment 2 to said section. The "perfection" of Evans' interest was not in issue, however, Evans had taken "all the applicable steps required for perfection." ORS 79.3030[9]

If defendants' intention was to retain title to the veneer after delivery and until cash was paid, and we will assume that was their intention, they could have reserved a "security interest" in the veneer and had priority over Evans. ORS 79.3120(3) gives one with a purchase money security interest priority over an inventory financier when certain steps have been taken. Defendants could have had a "purchase money security interest" as defined in ORS 79.1070(1). To create such interest an agreement signed by Coos and describing the collateral is necessary to satisfy ORS 79.2030. To perfect such interest a financing statement must be filed. ORS 79.3020. Evans must be notified before delivery that the sellers intend to have a purchase money security interest in the veneer.

Defendants did not attempt to create nor perfect any purchase money security interest in the veneer (that was the only interest they could reserve when delivery was made) and, therefore, Evans' security

---

[9] The perfection by filing was in compliance with ORS 79.4010 (1). ORS 79.4020 deals with the formal requisites of the financing statement and requires a description of the collateral. The financing statement made no specific mention of after-acquired property. The function of the financing statement is different than that of the security agreement which did include after-acquired property in the description of the collateral. The former is intended to give would-be creditors notice that there may be a prior security interest in the same collateral, while the latter contains the agreement between the secured party and debtor. The entire agreement need not be put on public record. The statement as filed is sufficient to warn prospective creditors that Evans' broad description of collateral as "inventory" may well include after-acquired property. National Cash Register Co. v. Firestone & Co., 346 Mass 255, 191 NE2d 471 (1963).

interest must prevail unless another section of the UCC gives priority to defendants. ORS 79.2010.

Defendants further contend that Evans' security interest in the plywood was extinguished when the plywood was transferred to the defendants.

ORS 79.3060(2) provides:

"Except where ORS 79.1010 to 79.5070 otherwise provide, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

The security agreement between Coos and Evans provides that Coos:

"* * * may also sell the Inventory and products thereof in the ordinary course of business * * *. A sale in the ordinary course of business does not include a transfer in partial or total satisfaction of a debt or any bulk sale."

If the transfer of the plywood to defendants was in satisfaction of a debt owing on the veneer, the transfer was in violation of the security agreement and Evans' security interest would continue in the plywood unless another UCC section provides otherwise.

ORS 79.3070(1) provides:

"A buyer in ordinary course of business as defined in subsection (9) of ORS 71.2010 * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

ORS 71.2010(9) states a sale in the ordinary course of business does not include a transfer "in total or partial satisfaction of a money debt."

If the transfer from Coos to defendants was a sale in the ordinary course of business, defendants acquired the plywood free of Evans' security interest. The issue under both the statutes and the agreement is whether the transfer was in satisfaction of a debt.

The defendants claim there was an exchange of value for value, veneer for plywood. However, there was a lapse in time between the delivery of the veneer and the receipt of the plywood; nor did the original plan call for such an exchange. Defendants, however, are not claiming that to qualify as buyers in the ordinary course there must be a direct exchange of veneer for plywood; rather, they make the novel argument that they received the plywood in exchange for their sellers' remedies under the sales article of the UCC.

Defendants contend that the transaction involved a cash sale and that they exchanged their rights under ORS 72.5070(2). If, however, the transaction is construed by us to be a credit sale, they claim that the plywood was received in consideration of their relinquishing their rights under ORS 72.7020(2) (right of reclamation after discovery of buyer's insolvency).

■ ORS 72.5070(2) provides: "Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due." We will assume for the moment that the agreement between defendants and Coos called for payment upon delivery of the veneer. Comment 3 to ORS 72.5070 states: "Subsection (2) deals with the effect of a conditional delivery by the seller and in such a situation makes the buyer's 'right as against the seller' conditional upon payment. These words are used as words of limitation to conform with the policy set forth in the bona fide purchase sections

of ORS 72.1010 to 72.7250." We interpret the seller's right to have the buyer's right to the goods conditional upon payment, even after delivery, to be applicable only as between buyer and seller and not as to third persons having the status of Evans who acquire some intervening interest. *Greater Louisville Auto Auction v. Ogle Buick, Inc.*, Ky, 387 SW2d 17, 20 (1965), appears to so interpret the UCC as to certain classes of intervening third persons. To interpret it to the contrary would be reverting to the pre-UCC concept of a "cash sale" which we previously stated was explicitly changed by the enactment of the UCC. Further, there is no evidence that as a matter of fact any right under ORS 72.5070(2) was exchanged, i.e., that defendants had any right to the veneer after delivery which could be exchanged.

The evidence of the payment terms of the transaction was the testimony of defendant Jorgensen who testified:

"Q * * * Now, I believe you indicated, in answers to my questions, that your understanding of the payment terms would be that you would load the plywood [veneer], it would be delivered, and your bookkeeper would make the extensions to determine how much money would be due, and you would then present the invoice to Coos, and you thereupon would be paid cash, is that your understanding of the arrangements?

"A Yes."

This payment against presentation of invoice appears to be a credit sale. Even if it be construed as a credit sale, defendants claim they can qualify as buyers in the ordinary course. They contend that Coos was insolvent when the veneer was delivered, that, therefore, they had a right to reclaim the veneer upon

demand within ten days, and that this right to reclaim was exchanged for the plywood.

The trial court found Coos was insolvent and we accept that finding. ORS 72.7020(2) provides for reclamation when an insolvent buyer has received goods on credit. However, the defendants did not reclaim the veneer, demand the return of the veneer, or say or do anything which could reasonably be construed as exchanging their right to reclaim the veneer for the plywood.

The testimony on this matter by the defendant Jorgensen was as follows:

"Q  You indicated, both in response to my questions and Mr. Foss' question, that you said you would rather have back the veneer. Did you make any kind of formal demand for your veneer back?

"A  None other than I would rather have my veneer, that it was readily salable."[4]

■ The only tenable interpretation of the transfer of the plywood to defendants is that it was received in satisfaction of the debt owing on the veneer. Thus, the transfer violates the terms of the security agreement and Evans' interest continues in the collateral, and this was not a sale in the ordinary course of business.

---

[4] Furthermore, we note, without deciding, that Evans might cut off the right of reclamation had a demand been made. ORS 72.7020(3) states:

"The seller's right to reclaim under subsection (2) of this section is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under ORS 72.4030. * * *."

Purchase is defined by ORS 71.2010(32) as follows:

" 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property."

It may well be argued that Evans "purchased" the veneer and thus, defendants' right of reclamation would be subject to the security interest.

Defendants lastly contend, and the trial court made a legal conclusion that Evans would be unjustly enriched if it were allowed to recover the plywood or its price. Defendants' chief argument is that if plaintiff prevails in this suit it will have the veneer for which defendants have not been paid or the plywood made from such veneer, as well as the plywood which is the subject of this suit, or the value thereof.

The purpose and effectiveness of the UCC would be substantially impaired if interests created in compliance with UCC procedures could be defeated by application of the equitable doctrine of unjust enrichment. We have held that Evans acquired a security interest in the veneer upon its delivery to Coos. It is admitted that Evans had a security interest in the plywood delivered by Coos to defendants and we have held that such security interest was not divested; therefore, under UCC Evans is entitled to both the veneer and the plywood. If the defendants had refused to deliver the veneer except for cash upon delivery, not upon invoice, or if defendants had perfected a purchase money security interest in the veneer, they would have had either the cash or a prior security interest in the veneer. They did not avail themselves of the protection afforded under the UCC while Evans did and, therefore, Evans is entitled to prevail.

Reversed.