565 P.2d 868

GENERAL ELECTRIC CREDIT
CORPORATION, a New York
Corporation, Appellant,

v.

TIDWELL INDUSTRIES, INC., an Alabama Corporation, and Midland Homes, Inc., a Texas Corporation, Appellees.

No. 12662.

Supreme Court of Arizona,
In Banc.

May 24, 1977.

Streich, Lang, Weeks, Cardon & Franch by Earl E. Weeks, Phoenix, for appellant.

Evans, Kitchel & Jenckes, P. C. by F. Pendleton Gaines, III and Jerry C. Bonnett, Phoenix, for appellees.

CAMERON, Chief Justice.

General Electric Credit Corporation, plaintiff below, appeals from an order of the trial court granting the motion for summary judgment of the defendant Tidwell Industries, Inc.

The following questions are raised by this appeal:

1. Was G.E.C.C. required to comply with the registration requirements of the Arizona motor vehicle registration code?

2. Did G.E.C.C. obtain and perfect a security interest in the 16 mobile homes superior to the interest of the manufacturer?

In reviewing the action of the trial court in granting a motion for summary judgment, we will view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party against whom the judgment was rendered. *Sax v. Kopelman,* 96 Ariz. 394, 396 P.2d 17 (1964); *Serna v. Statewide Contractors, Inc.,* 6 Ariz. App. 12, 429 P.2d 504 (1967).

The facts necessary for a resolution of the questions raised are as follows. Plaintiff, General Electric Credit Corporation (G.E.C.C.), is engaged in the business of providing "floor plan" or inventory financing for retail sellers of mobile homes. Parkwood Mobile Home Sales, Inc., a dealer in mobile homes, entered into an agreement with G.E.C.C. to provide financing for Parkwood. The agreement, dated 23 February 1973, provided that G.E.C.C. had "a security interest in all inventory, new and used, presently owned and hereafter acquired, /together with all proceeds of the sale or other disposition thereof * * *." Pursuant to that agreement, G.E.C.C. advanced monies to Parkwood to be used for inventory financing. When the suit was commenced, $566,751.22 of the amount advanced remained outstanding and unpaid. On the same day that the agreement was signed by Parkwood, G.E.C.C. filed a financing statement with the Arizona Secretary of State.

Defendant, Tidwell Industries, Inc., is a manufacturer of mobile homes and Midland Homes is a division of Tidwell Industries. Between 16 October 1973 and 14 December 1973, Tidwell sold and shipped sixteen mobile homes to Parkwood. The record on appeal does not show a written agreement between Tidwell and Parkwood, the sale apparently having been agreed to by the parties orally. Tidwell received no payment in part or in full for any of these mobile homes. Tidwell therefore retained the Manufacturer's Certificates of Origin for each of the mobile homes. The homes were shipped with an invoice containing the following legend:

"CAUTION: This invoice shall in no manner be construed to convey title to the Midland Home described herein, or to give any right to take possession thereof. Title to a Midland Home is transferred only through the Manufacturer's Certificate of Origin."

Tidwell did not file a financing statement evidencing its interest in the mobile homes with the Secretary of State, and Tidwell did not have actual knowledge of G.E.C.C.'s inventory financing agreement with Parkwood. It was not until after the mobile homes were shipped and placed on Parkwood's lots that Tidwell learned of G.E.C.C.'s security interest in Parkwood's inventory.

G.E.C.C. filed this action on 1 April 1974 seeking to establish its security interest in the mobile homes. Tidwell answered and counterclaimed for an order declaring it to be lawfully entitled to possession of the mobile homes free and clear of any security interest of G.E.C.C. Subsequently, both parties moved for summary judgment; the court denied G.E.C.C.'s motion; granted defendant Tidwell's cross-motion; and on 3 January 1975 entered judgment for Tidwell. From that order G.E.C.C. appeals. We have jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

## COMPLIANCE WITH THE MOTOR VEHICLE REGISTRATION CODE

Chapter 14, Title 44 of the Arizona Revised Statutes, 14 A.R.S., contains Arizona's enactment of the Uniform Commercial Code. A.R.S. §§ 44–3101, et seq., embodies Art. 9 of the code dealing with secured transactions. Pursuant to A.R.S. §§ 44–3123(A) and 44–3140, G.E.C.C. filed its financing statement with the Secretary of State. A.R.S. § 44–3123(C), however, provides:

"C. The filing provisions of this article do not apply to a security interest in property subject to a statute:

* * * * * *

"2. Of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property."

Arizona's motor vehicle registration code, A.R.S. §§ 28–301, et seq., provides for central filing of a lien and indication on the certificate of title of the lienholder. A.R.S. § 28–325. There was no compliance with these provisions of the motor vehicle registration code. Tidwell contends that by the former provisions of § 44–3123(C) and § 28–325, G.E.C.C. was required to file the fi-

nancing statement with the Motor Vehicle Division, together with the certificate of title in order that the lien could be endorsed on the new certificate of title. We do not agree.

At the time Tidwell sold the homes to Parkwood, the mobile homes were exempt from registration by statute:

"A. Manufacturer or dealer owned vehicles of types otherwise required to be registered are exempt from the provisions pertaining to registration while they retain this status. * * *" A.R.S. § 28–1311(A).

In addition, Parkwood did not have in its possession the certificates of title to the mobile homes as required by A.R.S. § 28–1310(A) presumably because Tidwell was holding the manufacturer's certificates of origin until payment was received.

We do not believe that former § 28–325 required endorsement of liens on the certificates of title to mobile homes until the homes were sold to individual buyers. Neither do we believe that the statute applied to the stock or inventory of new vehicles of a manufacturer or dealer. G.E.C.C. did not have to file its financing statement covering Parkwood's inventory with the Motor Vehicle Department in order to perfect its interest in such inventory.

To require in the instant case that G.E.C.C.'s security interest in and to the entire inventory of Parkwood be indicated on the certificate of title of each mobile home would either make the amount of the lien on each vehicle so large (in this case in excess of $500,000) that the trailers would be non-saleable or, if the amount of the lien is broken down pro rata as to each trailer in the inventory, it would completely defeat the after-acquired property clause of the agreement which is specifically allowed by A.R.S. § 44–3117(C).

## G.E.C.C.'S SECURITY INTEREST v. TIDWELL'S

■ Under the facts of this case, Tidwell Industries is an unpaid cash seller seeking to recover goods delivered to a dealer in those goods. G.E.C.C. is an inventory financier claiming an interest in the same goods as Tidwell as security for funds advanced by it to the dealer.

The trial court ruled that G.E.C.C. did not acquire a security interest or other rights superior to those of Tidwell in any of these mobile homes. On appeal, G.E.C.C. asserts that under the provisions of the Uniform Commercial Code as adopted in Arizona, A.R.S. § 44–2201, et seq., and by virtue of the after-acquired property clause of the security agreement entered into by Parkwood, it did obtain a security interest in these mobile homes.

A.R.S. § 44–3117(A) provides that a security interest attaches when (1) there is an agreement that it attach, (2) value is given by the secured party, and (3) the debtor acquires rights in the collateral. Here, the first two requirements of that section were clearly met; Parkwood had signed a security agreement in favor of G.E.C.C. and G.E.C.C. had advanced substantial sums of money.

The third requirement, that the debtor acquire rights in the collateral, was satisfied when Parkwood obtained possession of the mobile homes pursuant to the sales agreement between Tidwell and Parkwood. *Cain v. Country Club Delicatessen of Saybrook, Inc.,* 25 Conn.Sup. 327, 203 A.2d 441 (1964); *First National Bank of Elkhart County v. Smoker,* 153 Ind.App. 71, 286 N.E.2d 203 (1972).

Having obtained a security interest in and to the 16 mobile homes, G.E.C.C. perfected that interest by filing a financing statement with the Secretary of State pursuant to A.R.S. § 44–3123(A) and § 44–3140.

Tidwell maintains, however, that by the agreement between it and Parkwood which required Parkwood to pay cash upon receipt of the invoices, Parkwood never acquired any interest in the homes because Tidwell never received any payment and never forwarded the Manufacturer's Certificates of Origin to Parkwood. Tidwell argues then that since there was no intention that the mobile homes would become a part of Parkwood's inventory, Parkwood obtained no in-

terest in them whatsoever and G.E.C.C.'s "after-acquired" interest could not attach to these 16 mobile homes. Again we do not agree.

At common law, if a sale of goods was on credit, all the incidents of ownership passed to the buyer and the seller merely had a claim for the purchase price against the buyer but no rights against the goods sold. If the sale was for cash, however, the title in the goods did not pass until the purchase price was paid. Since the buyer did not have title until the goods were paid for, the buyer could not pass title to a third party, and a lienholder or attaching creditor obtained no interest in the goods.

The Uniform Commercial Code has changed this rule by favoring the good faith purchaser over the aggrieved seller, A.R.S. § 44–2348(A), and the defaulting buyer has the power to transfer title to a good faith purchaser even though he lacks the right to do so. A.R.S. § 44–2355(B). The code definition of a "purchaser" includes those parties taking by lien and encompasses an Article Nine secured party such as G.E.C.C. A.R.S. § 44–2208(32)(33). Furthermore, there is no evidence to suggest that G.E.C.C. acted other than in good faith in its dealings with Parkwood. A.R.S. § 44–2208(19).

G.E.C.C. can therefore be deemed a good faith purchaser for value, and its claim to the mobile homes takes precedence over the claim of the unpaid seller Tidwell. See *In Re Samuels*, 510 F.2d 139 (5th Cir. 1975), rev'd per curiam, 526 F.2d 1238 (5th Cir. 1976), cert. denied, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976).

By retaining "title" to the mobile homes, Tidwell merely reserved for itself an unperfected purchase money security interest, A.R.S. § 44–2346, and under the provisions of A.R.S. § 44–3122, G.E.C.C.'s perfected security interest in the 16 mobile homes takes priority over Tidwell's unperfected security interest in the same collateral:

"Thus, the draftsmen of the code intended that its provisions should not be circumvented by manipulation of the locus of title. For this reason, consignment sales, conditional sales, and other arrangements or devices whereby title is retained in the seller for a period following possession by the debtor are all treated under Art. 9 as though title had been transferred to the debtor and the creditor-seller had retained only a security interest in the goods." *James Talcott, Inc. v. Franklin National Bank*, 292 Minn. 277, 285, 194 N.W.2d 775, 781 (1972).

These rules may seem harsh to Tidwell, but Tidwell was not without a means of protecting itself. Under the provisions of A.R.S. § 44–3133(B), Tidwell could have obtained priority over any security interest of G.E.C.C. if Tidwell had perfected its purchase money security interest and notified G.E.C.C. before the mobile homes came into Parkwood's possession. This Tidwell did not do. Tidwell's purchase money security interest remained unperfected and was inferior to G.E.C.C.'s perfected security interest. Chief Justice Denecke, speaking for the Oregon Supreme Court, stated the law as follows:

"If defendants' intention was to retain title to the veneer after delivery and until cash was paid, and we will assume that was their intention, they could have reserved a 'security interest' in the veneer and had priority over Evans. ORS 79.-3120(3) gives one with a purchase money security interest priority over an inventory financier when certain steps have been taken. * * *

"Defendants did not attempt to create nor perfect any purchase money security interest in the veneer (that was the only interest they could reserve when delivery was made) and, therefore, Evans' security interest must prevail unless another section of the UCC gives priority to defendants. ORS 79.2010." *Evans Products Co. v. Jorgensen*, 245 Or. 362, 367, 421 P.2d 978, 981 (1966).

The rule is not without reason. By allowing the mobile homes to remain on Parkwood's lot without filing notice of its claim of security interest, Tidwell could well have misled G.E.C.C. as well as other creditors of Parkwood into believing that Parkwood

possessed greater assets than was the case. The Uniform Commercial Code requires that we must prefer the party who has complied with all the requirements to perfect its security interest over the one who does not.

Tidwell, however, cites *Zions First Nat. Bank v. First Sec. Bank of Utah, N.A.*, 534 P.2d 900 (Utah 1975) in support of its position that Parkwood acquired no rights upon which G.E.C.C.'s interest could attach. In that case, the court sustained a lower court finding that cattle shipped to a feedyard were owned by the seller and not subject to the bank's security interest in the feedyard's after-acquired property. That case, however, is readily distinguishable on its facts. Shortly after the seller shipped the cattle to the buyer and upon learning that the buyer could not pay for the cattle, the seller had the cattle separated and marked with a brand later registered to him. In the instant case, by contrast, Tidwell made no effort to segregate its mobile homes or withdraw them from Parkwood's lots when no payment was forthcoming. On the contrary, it allowed Parkwood to retain possession and control of the mobile homes for anywhere from thirty to ninety days without making any effort to perfect its interest or notify creditors including G.E.C.C.

Tidwell also cites *International Harvester Credit Corp. v. American National Bank of Jacksonville*, 296 So.2d 32 (Fla.1974), where the court held that a secured party holding a security interest obtained under an after-acquired property clause had priority over the holder of an unperfected purchase money security interest, but limited that priority to the debtor's equity or ownership interest in such property. Tidwell, noting that Parkwood had no equity in these mobile homes, urges this court to adopt the rule laid down in that case. We decline to do so.

As pointed out in Chief Justice Carlton's dissenting opinion, there is nothing in the code which limits security interests in after-acquired property to the debtor's equity. Not only would that rule render the code provision as to the priority of a purchase money security interest over a prior secured creditor meaningless, it would reward a person who has failed to provide other creditors with notice of his security interest since he need not file in order to prevail. As Justice Carlton's dissent points out:

"[T]he majority opinion seems to be looking at this situation as if the only party involved who has any need for notice of the other creditor's interest is the holder of the purchase money security interest. Completely ignored is the fact that the agreement creating a security interest in after-acquired property might also have contained a provision for future advances to be secured by the same collateral (a common practice of modern financing). If a seller is allowed to place in the hands of a debtor valuable property which is encumbered, and is not required to file the encumbrance, a prior creditor may advance further sums on the mistaken belief that his security is increased considerably by after-acquired property. The strict notice *(filing)* requirements of the Code operate to equitably protect *both* parties. What could be more equitable than a system which gives priority to any party only if he gives proper notice to other parties so that they are not injured?" 296 So.2d at 43. See Willier & Hart, U.C.C. Reporter-Digest § 9–312, A 41.

The judgment of the trial court granting Tidwell's motion for summary judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.