618 P.2d 240

AMFAC MORTGAGE CORPORATION, an Oregon Corporation, Appellant,

v.

ARIZONA MALL OF TEMPE, INC., a Minnesota Corporation; Reppel Steel & Supply Company, an Arizona Corporation, Appellees.

No. 1 CA–CIV 4194.

Court of Appeals of Arizona, Division 1, Department A.

July 8, 1980.

Rehearing Denied Sept. 11, 1980.

Review Denied Sept. 25, 1980.

Streich, Lang, Weeks & Cardon by William S. Hawgood, II, and Jeffrey Willis, Phoenix, for Amfac Mortg. Corp.

Meyer, Vucichevich & Cimala by Ronald H. Cimala, and John S. Schaper, Phoenix, for Reppel Steel & Supply Co.

1. The rights and liabilities between Reppel, Watson and Commercial Union have been resolved in other litigation and by settlement. *See Watson Const. Co. v. Reppel Steel & Sup-*

**71**

OPINION

DONOFRIO, Judge.

This appeal concerns the attachment and enforcement of security interests under the Arizona version of The Uniform Commercial Code.

This action arose out of a shopping mall construction project that aborted prior to completion. A foreclosure suit was instituted by appellant Amfac Mortgage Corporation (Amfac), construction lender against Arizona Mall of Tempe, Inc. (Arizona Mall) owner–developer; Watson Construction Co. (Watson) general contractor; and Reppel Steel & Supply Co., Inc. (Reppel) subcontractor. Reppel cross–claimed against Watson for damages and by third–party complaint sued Commercial Union Insurance Company (Commercial Union) the surety on Watson's performance bond. Although the proceedings below involved multiple claims and parties [1] our focus in this appeal is limited to the relative rights of Amfac and Reppel to certain structural steel. The material facts in this case are undisputed.

In July of 1973 Arizona Mall entered into a contract with Watson for the construction of a shopping mall in Tempe, Arizona. Under the contract Watson was to acquire all materials to be incorporated into the structure and to build the mall. Watson guaranteed that title to the materials would pass to Arizona Mall free and clear of all liens, claims and encumbrances upon satisfaction of certain conditions including payment. On August 27, 1973 Amfac entered into a building loan agreement with Arizona Mall for $22.5 million to finance the project and in return received a promissory note and a security instrument which provided in material part:

[A] security interest in all building materials, fixtures and equipment to be incorporated into the improvements for which the construction loan secured hereby is being made, such security interest to be effective at all times prior to the time

*ply,* 123 Ariz. 138, 598 P.2d 116 (App.1979). *See also Watson Const. Co. v. Amfac Mortg. Corp.,* 124 Ariz. 570, 606 P.2d 421 (App.1979).

that such building materials, fixtures and equipment are actually incorporated into the improvements ... and a security interest in whatever interest the Debtor [Arizona Mall] may have in all goods, supplies, fixtures, equipment ... which are now or may hereafter be appropriated for use on, or located on, the real property [designated as the site for the shopping mall].

Amfac filed a financing statement covering the above–described materials as collateral. Construction began in October 1973 on the property of Arizona Mall. Watson entered into three subcontracts with Reppel in 1974 under which Reppel agreed to furnish the structural steel for construction of the mall. These subcontracts provided that Watson would pay for the steel delivered to the construction site within sixty days after receipt of Reppel's invoices. This appeal concerns approximately 850 tons of the steel Reppel manufactured and delivered but which was never incorporated into the planned structure. Reppel received only partial payment on the steel leaving a substantial unpaid balance due. Neither Reppel nor Watson filed a financing statement to perfect any purchase money security interest they may have had in the subject steel.

Amfac brought this action because of a series of defaults by Arizona Mall. On August 23, 1976 Reppel was granted summary judgment on its claims against Watson and Commercial Union for $1.7 million and thereby became a judgment creditor of Watson. Amfac's claim for relief to foreclose its security interest in the structural steel was submitted to the court on cross–motions for summary judgment by both Amfac and Reppel. The trial court granted Amfac's motion as to all the steel except that portion which was not incorporated into the structure. The court specifically held that Amfac's lien created by the secur-

ity agreement between it and Arizona Mall did not attach to the structural steel delivered to the Tempe Mall site but not yet erected because Arizona Mall had no rights therein. It is that portion of the ruling that is challenged here.

For Amfac to enjoy the preferred status and treatment of a secured creditor it must have complied with the provisions of A.R.S. § 44–3101 *et seq.* which govern secured transactions. We hold that Amfac complied and therefore has a security interest in the delivered but unincorporated steel.

■ Under the Arizona version of the Uniform Commercial Code a security interest[2] attaches when (1) there is an agreement that it attach, (2) value is given by the secured party, and (3) the debtor has rights in the collateral.[3] *General Electric Credit Corp. v. Tidwell Industries*, 115 Ariz. 362, 565 P.2d 868 (1977). The parties agree that the first two requirements have been met. As previously noted, Amfac and Arizona Mall entered into an agreement that the security interest attach to the subject collateral and Amfac advanced monies to Arizona Mall. Amfac timely filed a financing statement that was proper as to form, content and place of filing.[4]

The controversy here is whether Arizona Mall, the debtor, acquired sufficient rights in the collateral to support a security interest in Amfac. The trial court ruled that Amfac's security interest did not attach to the delivered but unincorporated structural steel because Arizona Mall had no rights there. We disagree.

Reppel contends that Arizona Mall could not create a security interest in the unincorporated structural steel in favor of Amfac because it did not have any rights in this steel. Specifically, Reppel argues that Arizona Mall had no rights because of the following: (1) Mere possession of the steel by virtue of it being present on Arizona

---

2. A.R.S. § 44–2208(37) defines security interest as an interest in personal property or fixtures which secures payment or the performance of an obligation.

3. A.R.S. § 44–3117 which controls in this appeal was amended by A.R.S. § 44–3116 effective January 1, 1976.

4. A.R.S. §§ 44–3116, 44–3117, 44–3132 and 44–3140.

Mall's land is insufficient, (2) the contract between Reppel and Watson did not contemplate Arizona Mall acquiring any rights in title to the steel until Watson took certain steps to get paid by Arizona Mall for the steel, and (3) whatever special property interest Arizona Mall may have under the sales article of the commercial code is insufficient to constitute rights in the collateral for the attachment of a security interest.

Amfac argues that Arizona Mall had sufficient rights in the collateral for attachment of the security interest on the following alternative bases: (1) Arizona Mall owned the construction site where the steel was located and therefore had a possessory interest in the steel, (2) Arizona Mall had possession of the collateral with the contingent right of ownership, (3) Arizona Mall had a sufficient bundle of rights in the steel under the sales article of the commercial code.

The Arizona courts have addressed the question of the quantum of rights a debtor must have in an item of collateral for a security interest to attach. While no Arizona case has dealt squarely with the factual context involved here, our courts have held that the debtor has sufficient rights in collateral for the attachment of a security interest when the debtor obtains possession of the collateral pursuant to an agreement with the seller–manufacturer of the collateral. *General Electric Credit Corp. v. Tidwell Industries, Inc., supra; General Electric Credit Corp. v. Town & Country Mobile Homes, Inc.*, 117 Ariz. 562, 574 P.2d 50 (App.1977). We have reviewed the decision of other jurisdictions that have considered the question and find them in accord.[5]

▮ The case of *In re County Green Limited Partnership*, 438 F.Supp. 693 (W.D.Va. 1977) dealt with the question before this court in a strikingly similar factual context. County Green Limited Partnership (Limited Partnership), property owner, undertook to build an apartment complex. It arranged financing through a bank and gave this construction lender a security interest in a variety of items including certain appliances owned by the partnership or used by it on the apartment premises. A financing statement was timely and properly filed by the bank. Limited Partnership entered into a contract engaging County Green Development Corporation (Development Corporation), construction company, as a general contractor. Pursuant to this contract Development Corporation was responsible for building the apartment complex and furnishing the appliances. Development Corporation subcontracted with Goldberg, Inc. to supply the appliances. Goldberg delivered the appliances to the construction site but failed to properly file a financing statement covering the goods. Limited Partnership went into bankruptcy and litigation followed in which Goldberg claimed that the construction lender's security interest could not attach because Limited Partnership, debtor, never acquired rights in the appliances. The District Court held that the debtor had sufficient rights in the collateral for the security interest to attach:

This Court is of the opinion that the mere delivery of the appliances to the construction site for use on the construction project was sufficient to give the debtor rights in the collateral for purposes of § 8.9–203(2). Although the debtor's rights were contingent upon its compliance with the general contract they were nevertheless sufficient to allow attachment of a security interest. See generally, *Matter of Samuels and Company, Inc.*, 526 F.2d 1238 (5th Cir. 1976). As possession with contingent rights of ownership is sufficient to predicate the attachment of a security interest under § 8.9–203,

5. *See, Evans Products Company v. Jorgensen*, 245 Or. 362, 421 P.2d 978 (1966), possession of collateral which was delivered pursuant to sales contract is sufficient; *In the Matter Of Bosson*, 432 F.Supp. (D.Conn.1977), which Article 2 rights are insufficient to establish Article 9 rights in collateral, possession pursuant to sales contract is sufficient; *Mortion Booth Co. v. Tiara Furniture, Inc.*, Okl., 564 P.2d 210 (1977), debtor has sufficient rights for security interest to attach where he gains possession of collateral pursuant to an agreement endowing him with any interest more than naked possession.

when coupled with actual payment it is a fortiori sufficient.[6]

*Id.* at 696. We agree with the analysis of the court in *County Green* that possession of the collateral with contingent rights of ownership is a sufficient quantum of rights to support the attachment of a security interest with or without payment.

■ In the case at hand, Arizona Mall had possession of the unincorporated structural steel with the contingent right of ownership. In November 1974 Watson abandoned the construction site leaving the steel on the property and in the possession of Arizona Mall. While it is possible that Arizona Mall had sufficient rights in the collateral prior to that time, we need not reach that question. The contingent right of ownership was based on the contract between Arizona Mall and Watson which provided that Watson was to acquire all materials to be incorporated into the structure and pass title to those materials free and clear of encumbrances to Arizona Mall.

We specifically reject appellee's argument that Arizona Mall had no right in the collateral until passage of title to Arizona Mall which was claimed contingent upon Watson fulfilling certain conditions precedent before it received payment.

First, the rights, obligations and remedy provisions of the secured transaction article apply irrespective of title concepts. The pertinent provisions of A.R.S. § 44–2346 state:

> § 44–2346. Passing of title; reservation for security; limited application of this section.
>
> *Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods* except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title

become material the following rules apply:

\* \* \* \* \* \*

> 2. Unless otherwise explicitly agreed *title passes to the buyer at the time and place at which the seller completes* his performance with reference to the *physical delivery* of the goods, . . . . (Emphasis Supplied)

Second, the parties made no explicit agreement to the contrary and therefore title to the steel passed out of Reppel upon delivery to the job site. A.R.S. § 44–2346(2). Third, assuming arguendo that the contract contemplated the reservation of an interest in Reppel until certain conditions were met, the only interest that could be reserved would be limited in effect to a security interest. A.R.S. § 44–2346(1). The interest of Reppel was therefore limited to that of an unperfected purchase money security interest. A.R.S. § 44–3107(1).

■ Having determined that Arizona Mall had sufficient rights in the unincorporated steel we now turn to the question of priorities. Amfac has a perfected security interest in the subject steel. Reppel has an unperfected purchase money security interest.[7] Pursuant to A.R.S. § 44–3122 and § 44–3133(C) the interest of Reppel is subordinate to that of Amfac. Further, Amfac's interest in the steel is not limited to the debtor's equity therein. *Tidwell Industries, supra.*

While these rules have a harsh impact on Reppel as an unpaid supplier, it should be noted that Reppel could have protected itself and obtained priority over Amfac by simply perfecting its purchase money security interest. A.R.S. § 44–3133(B) and (C).

The judgment of the trial court is reversed.

FROEB, P. J., and WREN, J., concur.

---

6. Va.Code Ann. § 8.9-203 is the equivalent of A.R.S. §§ 44 3116 and 44-3117.

7. Reppel does not assert any priority in the steel based upon its right as a lien creditor. *See* A.R.S. § 44-3122.