861 F.2d 241
 19 Collier Bankr.Cas.2d 1254, Bankr. L. Rep. P 72,527,
7 UCC Rep.Serv.2d 583
In re CONTRACTORS EQUIPMENT SUPPLY CO., Debtor,
Iris DEWHIRST, et al., Plaintiffs-Appellees,
v.
CITIBANK (ARIZONA), Creditor-Appellant.
 No. 87-2967.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 14, 1988.
Decided Nov. 10, 1988.
 
 1
 Edward P. Ballinger, Brown & Bain, Phoenix, Ariz., for creditor-appellant.
 
 
 2
 Charles W. Lowe, Davis & Lowe, Phoenix, Ariz., for plaintiffs-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Arizona.
 
 
 4
 Before SCHROEDER and WIGGINS, Circuit Judges, and STEPHENS, Senior District Judge.*
 
 STEPHENS, Senior District Judge:
 
 5
 Citibank appeals the district court's affirmance of the bankruptcy court's grant of summary judgment in favor of Pima County Department of Transportation (Pima). Citibank is a creditor of the debtor in possession, Contractors Equipment Supply Company (Contractors Equipment). Citibank contends the bankruptcy court was without jurisdiction because its dispute with Pima did not involve property of the estate. We affirm.
 
 FACTS
 
 6
 In April 1983, Contractors Equipment granted Citibank a security interest in all of its accounts receivable, including future accounts receivable. In December 1984, Contractors Equipment contracted to sell Pima County Department of Transportation four Pneumatic Rollers, delivery to be around the second week of September 1985. On February 15, 1985, Citibank notified Pima of Citibank's security interest in Pima's future debt to Contractors Equipment and that any payments should be made directly to Citibank, checks payable either to Contractors Equipment or jointly to Contractors Equipment and Citibank.
 
 
 7
 Contractors Equipment filed a petition for relief under chapter 11 of the bankruptcy code on June 6, 1985.[1] On June 14, 1985, the bankruptcy court found that Contractors Equipment's secured obligation to creditor Citibank was adequately protected.[2] Accordingly, the bankruptcy court granted Contractors Equipment's motion to use cash collateral.
 
 
 8
 On June 25, 1985, Contractors Equipment wrote to Pima that "[t]he court has directed that all payments be made direct to our company...." Contractors Equipment delivered the Pneumatic Rollers to Pima on September 17, 1985. On September 24, 1985, Pima paid the balance of its outstanding debt directly to Contractors Equipment.
 
 
 9
 Citibank then filed a complaint against Pima in Arizona Superior Court that alleged Pima's payment to Contractors Equipment was in violation of Citibank's rights under Article Nine of the Uniform Commercial Code. In response, Pima filed an adversary proceeding in the bankruptcy court requesting a declaration that Pima had discharged its obligation by having paid Contractors Equipment in full. Citibank moved to dismiss the adversarial proceeding on the ground that resolution of the dispute would not affect Contractors Equipment's reorganization.
 
 
 10
 The bankruptcy court denied the motion to dismiss on the basis that to allow Citibank to pursue its state court action would be in violation of the automatic stay provision of the bankruptcy code and would interfere with the bankruptcy court's cash collateral order. Later, the bankruptcy court granted summary judgment in favor of Pima, holding that Citibank only had a security interest in the future account receivable, the account receivable was property of the estate, and Pima had discharged its obligation by turning the money over to the estate. The district court affirmed.
 
 ANALYSIS
 
 11
 * Standard of Review
 
 
 12
 This court is in an equally advantageous position to review the bankruptcy court as the district court was; accordingly, we independently review the bankruptcy court's decision. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. Id.; see Bnkr.R. 8013. A finding of fact is clearly erroneous when, after reviewing the evidence, we are "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541-42, 92 L.Ed. 746 (1948)). Interpretations of state law are reviewed de novo. Churchill v. Fjord (Matter of McLinn), 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).II
 
 Property of the Estate
 
 13
 Citibank contends the bankruptcy court erred by asserting jurisdiction over Citibank's dispute with Pima because the dispute was wholly between third parties so it did not involve property of the debtor's estate. Specifically, Citibank argues that once it notified Pima of its interest and that payments were to be made to Citibank, the payment to debtor Contractors Equipment violated Citibank's collection rights under Ariz.Rev.Stat. Secs. 47-9318(c) and 47-9502.[3] Citibank contends this gave rise to its state law claim against Pima for wrongful payment, which did not involve debtor Contractors Equipment. Citibank's analysis is that once debtor Contractors Equipment was in default and Citibank foreclosed on Pima's future account.[4] The debtor and, therefore, the debtor's estate no longer had an interest in the Citibank-Pima relationship.[5] Pima argues the bankruptcy court was correct because Contractors Equipment retained an interest in the future account receivable so it was properly treated as property of the estate under 11 U.S.C. Sec. 541. Pima's contention has merit.
 
 
 14
 The property of the debtor's estate includes property in which a creditor has a security interest. United States v. Whiting Pools, Inc., 462 U.S. 198, 203, 103 S.Ct. 2309, 2312-13, 76 L.Ed.2d 515 (1983); 11 U.S.C. Sec. 541(a)(1) (property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case). If a debtor has an interest in property, the trustee can order the turnover of the property to the estate. 11 U.S.C. Sec. 542. Property of the estate encompasses property of the debtor that was seized by a creditor before the petition for reorganization was filed. Whiting Pools, 462 U.S. at 209, 103 S.Ct. at 2315-16. Whiting Pools, however, expressly left open whether property becomes property of the estate if the seizure operates to transfer ownership, leaving the debtor with no interest in the property. Id. at 209, 103 S.Ct. 2315-16.[6] Generally, ownership is transferred only when the seized property is sold to a bona fide purchaser. Id. at 211, 103 S.Ct. at 2316-17.
 
 
 15
 Whether a debtor in possession has an interest in property is determined by state law. California v. Brown (In re Farmers Markets, Inc.), 792 F.2d 1400, 1402 (9th Cir.1986). Arizona has adopted Article Nine of the Uniform Commercial Code. See Ariz.Rev.Stat. Secs. 47-9101 to -9507. Article Nine applies both to transactions that involve a security interest in an account receivable and to transactions that involve a sale of accounts receivable. Ariz.Rev.Stat. Secs. 47-9102(A), (B); see Major's Furn. Mart v. Castle Credit Corp., 602 F.2d 538, 542 (3rd Cir.1979). The need to distinguish whether an account receivable transaction involves a sale or a security interest usually rises when a creditor exercises its option to foreclose on collateral under Sec. 47-9502; if the transaction involved a sale, the debtor is entitled to any surplus or is liable for any deficiency only if it is provided for in the parties agreement. Ariz.Rev.Stat. Sec. 47-9502(B). A sale entails the passage of title. Ariz.Rev.Stat. Sec. 47-2106. If the transaction involves only a security interest, the debtor is entitled to any surplus and liable for any deficiency. Id.
 
 
 16
 The bankruptcy court did not err by finding that the transaction between Citibank and Contractors Equipment only implicated a security interest. First, creditor Citibank does not contend that debtor Contractors Equipment was not still independently obligated on the debt, or was not entitled to any surplus there might have been. Second, Citibank's notice to Pima did not operate to reduce Contractors Equipment debt to Citibank. Finally, the agreement between Contractors Equipment and Citibank expressly contemplates the creation of a security interest. See In re Evergreen Valley Resort, Inc., 23 B.R. 659 (D.Maine 1982) (identifying factors relevant to determination whether security interest or absolute assignment is involved).
 
 
 17
 Because the assignment involved only a security interest and did not transfer title, Contractors Equipment retained an interest in the account receivable even after Citibank's notice to Pima. This interest was sufficient to bring the account receivable into the debtor's reorganization estate. See 11 U.S.C. Sec. 541(a)(1).[7] Accordingly, the bankruptcy court had jurisdiction over the dispute between Pima and Citibank. See 28 U.S.C. Sec. 157; 28 U.S.C. Sec. 1334.[8] Citibank's remedy is through the adequate protection provision of the code.
 
 CONCLUSION
 
 18
 We affirm.
 
 
 
 *
 The Honorable Albert Lee Stephens, Jr., Senior District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Because Citibank's notice to Pima occurred more than 90 days prior to Contractors Equipment's petition for relief, this case does not present any issue regarding a preferential transfer. See 11 U.S.C. Sec. 547
 
 
 [2]
 The bankruptcy court concluded that Citibank was adequately protected because Contractors Equipment owed $664,000.00 and the collateral securing the debt had a fair market value of over $800,000.00. Citibank does not contend that it is not adequately protected
 
 
 [3]
 An account debtor may pay an assignor until notified that the account has been assigned and payment is to be made to the assignee. Ariz.Rev.Stat. Sec. 47-9318(C). In the event of default by a party whose obligation is secured by accounts receivable, the secured party may notify the account debtor to make payments directly to the secured party. Ariz.Rev.Stat. Sec. 47-9502
 
 
 [4]
 It should be noted that Citibank's notice to Pima cited to Ariz.Rev.Stat. Sec. 47-9318 as the source of its rights. That portion of the UCC does not relate to a debtor's default and only provides an assignee a method of collection. See UCC Sec. 9-318, comment 3
 
 
 [5]
 Creditor Citibank's parallel stance is that the debtor's estate had already received payment so creditor Citibank's relationship with account debtor Pima could not affect the estate. This overlooks the fact that presumably Pima would have a claim against the estate if it were required to pay twice on the same debt
 
 
 [6]
 Whiting Pools involved the seizure of tangible property. Post-Whiting Pools cases involving levies on bank accounts and accounts receivable have differed on whether a prepetition levy operated to transfer ownership and to keep the account from being property of the estate. Some have held that the debtor retains a right in the monies until an actual transfer occurs. See e.g., In re AIC Industries, Inc., 83 B.R. 774, 775-77 (Bnkr.D.Colo.1988) (sufficient residual property interest retained in account); Rouse v. United States (In re Suppliers, Inc.), 41 B.R. 520, 522-23 (Bnkr.E.D.Ky.1984) (more than notice is required to extinguish rights); Davis v. IRS (In re Davis), 35 B.R. 795, 797-99 (Bnkr.W.D.Wash.1983); Debmar Corp. v. United States (In re Debmar Corp.), 21 B.R. 858 (Bnkr.S.D.Florida 1982) (analyzing second circuit decision in Whiting Pools ). Other cases have held that a notice of levy extinguishes a debtor's interest in the account. See e.g., Professional Technical Services v. IRS (In re Professional Technical Services), 71 B.R. 946, 950-51 (Bnkr.E.D.Mo.1987); Momentum Computer Systems Intern'l v. Cortani.Brown.Rigoli (In re Momentum Computer Systems Intern'l.), 66 B.R. 512, 514 (Bnkr.N.D.Cal.1986) (writ of execution of a judgment--under a continuing levy theory, amounts that became due already belonged to the creditor); DiFlorio v. United States, 30 B.R. 815, 818 (Bnkr.N.D.N.Y.1983) (with cash, property need not be sold to transfer ownership)
 
 
 [7]
 Furthermore, although creditor Citibank gave notice to Pima prior to Contractors Equipment petition for relief, the account had not yet come into existence, so the security interest did not attach, until after Contractors Equipment filed for Chapter 11 relief. See Ariz.Rev.Stat. Sec. 47-9203 (security interest does not attach until the debtor has rights in the collateral); Amfac Mortg. Corp. v. Arizona Mall of Tempe, 127 Ariz. 70, 618 P.2d 240, 242 (Ariz.App.1980)
 
 
 [8]
 The cases cited by Citibank do not dictate a different result. In Harris v. Farmers Home Administration (Matter of Bargstedt), 7 B.R. 556 (M.D. Georgia 1980), the court only decided that there was a valid assignment so the assignee had a superior right to the money than the trustee who claimed the money as proceeds from property of the estate under 11 U.S.C. Sec. 541(a)(6). There was not any issue regarding a security interest. If the present case involved a true assignment, under basic contract law principles, the notification would have taken the account receivable out of the estate. See In the Matter of Modern Settings, Inc., 74 B.R. 358, 360-61 (Bnkr.E.D.N.Y.1987) (until notification of assignment, obligor retains power to discharge and to modify duties; those powers become property of the estate). Shaw Industries, Inc. v. Gill (In Re Flooring Concepts, Inc.), 37 B.R. 957 (Bnkr. 9th Cir.1984) involved a new contract between the general contractor and the company that furnished materials to the subcontractor. The company agreed to forego its right to pursue a materialman's lien if the general contractor agreed to pay it directly. Because the parties had entered into a new contract, the general contractor had an independent obligation to pay the company and the payments did not become part of the subcontractor's bankruptcy estate. Id. at 961. Although account debtor Pima arguably had an independent obligation to pay creditor Citibank after account debtor Pima received notice, see Valley Nat. Bank of Ariz. v. Flagstaff Dairy, 116 Ariz. 513, 570 P.2d 200, 203 (1977), the bankruptcy code modifies the procedural rights of secured parties. Whiting Pools, 462 U.S. at 206, 103 S.Ct. at 2314