[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF ATTORNEY TRIAL REFEREE
A. FINDINGS OF FACT
 1. The Plaintiff Citicorp Acceptance Co, Inc. is in the business of loaning money to purchasers of new automobiles from car dealers.
 2. The Defendant Robert Bunnell was an employee of T.N.M. Lathrop Co., Inc, from whom the Defendant purchased a new 1988 Audi Quatro on December 8, 1988.
 3. The Plaintiff entered into a Retail Installment Sales Contract with the Defendant for the purchase money for the vehicle, which contract is Plaintiff's Exhibit C.
 4. The Plaintiff alleges that the Defendant was an upper level management employee of the car dealership. The evidence has proven that he was the service manager during the relevant times and not an upper management employee.
 5. Neither the Defendant not the Plaintiff ever received any title documents to the 1988 Audi.
 6. The Defendant received possession of the vehicle in December of 1988 and did not register the vehicle in his name.
 7. He informed the Plaintiff he did not intend to do so as the dealership permitted him to use the vehicle with dealer plates.
 8. He purchased the vehicle for his own personal use and it was a consumer transaction.
 9. After telephone calls from the Plaintiff regarding the location of the title documents, on May 19, 1989 the Defendant signed a Power of Attorney authorizing the Plaintiff to sign any Certificates of Ownership and to transfer any registration of the vehicle.
 10. The Plaintiff made one attempt to secure a Manufacturer's Certificate of Origin from the dealership in order to secure the motor vehicle title.
 11. After it was informed by the dealership that the statement was missing and a duplicate would be secured, it took no further action to secure the motor vehicle title.
12. In late August of 1989, the vehicle was repossessed CT Page 218 by the lending institution providing the floor plan financing for the car dealership.
 13. Until the repossession of the vehicle, the Defendant made all required installment payments to the Plaintiff.
 14. The Plaintiff filed an objection in the bankruptcy proceedings filed by the dealership in September of 1989, objecting to the sale of the vehicle free and clear of liens, alleging that the dealership had committed fraud both against it and the Defendant. The objection was not granted.
 15. The facts establish that the Defendant was a buyer in the ordinary course of the vehicle.
 16. When he signed the power of attorney to the Plaintiff authorizing it to perform all steps to secure the necessary title documents, any opportunity he may have had to remedy the dealership's failure to provide the title documents had ended.
 17. The Plaintiff seeks payment in full of the balance under the Retail Installment Sales Contract as a holder in due course of that instrument.
 18. At all relevant times, the Plaintiff had actual knowledge of the title defect and as of May of 1989 when the power of attorney was signed stood in the same shoes as the Defendant with respect to that documentation.
 19. For three and one half months except for one phone call it took no action to perfect the security interest it had acquired in the vehicle at the time of its purchase by the Defendant from the dealership.
 20. As set forth in its own motion filed with the bankruptcy court, it knew of the fraud committed by the dealership upon the Defendant.
 21. The Plaintiff was not a holder in due course of the Retail Installment Sales Contract entered into between the Plaintiff and the Defendant on December 8, 1988.
 22. On December 8, 1988 it acquired a scarcity interest in the vehicle which was never perfected.
B. CONCLUSIONS OF LAW
On December 8, 1988 at the time of the delivery of the funds, CT Page 219 the taking of possession of the vehicle by the Defendant and the execution of the Retail Installment Sales Contract, the Plaintiff acquired a security interest in the 1988 Audi Quato purchased by the Defendant. See Connecticut General Statutes 42(a) 9-109 regarding the requirements for the acquisition of a security interest in collateral and AMFC Mortgage Corp. vs. Arizona Mall of Tempe, Inc, 127 Ariz. 20, 618 P.2d 240 (1980) holding that possession of the collateral with contingent rights of ownership is a sufficient quantum of ownership to support the attachment of a security interest. That security interest was not perfected by the Plaintiff with the title documents so as to protect its interest as to the claims of third parties.
The requirements for status as a holder in due course are set forth in Connecticut General Statutes 42(a) 3-302 and apply to secured transaction see 42(a) 9-105 where applicable under the facts. Many cases hold that where a party has actual knowledge of any defenses the debtor has against the seller, that party cannot acquire holder in due course status. In the case of A. David Schlaut, M.D. P.C. Pension Trust vs. Mastercraft Industries, Inc, 495 N.Y.S.2d 211, 14 And 746 (1985) the court found that where a note holder is involved in the transaction he cannot stand aloof as a holder in due course to the transaction. See also Morgan vs. Reason Corp., 73 Cal.Rptr. 398, 69 C.2d 881, 447 P.2d 638 (1968) holding that a financing institution may be so closely connected with the seller or the particular sale at issue in which the note was executed to be denied status as a holder in due course of the note. That certainly was the case in this instance with the Plaintiff and the Defendant. The crux of the issue at hand was summed up in the case of Unico vs. Owen, 50 N.J. 101, 232 A.2d 405 (1967) where the court stated:
 "The courts have recognized that the basic problem in consumer good sales and financing is that of balancing the interest of the commercial community in unrestricted negotiability of commercial paper against the interest of installment buyers of such goods in their remedy of withholding payment when, as in this case, the seller fails to deliver as agreed and the consideration for his obligation fails." (at page 411).
With respect to this transaction because of its knowledge, the Plaintiff cannot claim to be a holder in due course. As a result, it is subject to all the defenses that the Defendant had against the dealership had the dealership sued to recover the purchase price of the vehicle. When viewing the matter in this light, it is clear that the Defendant's defenses against CT Page 220 the dealership as to no delivery of title and the loss of the vehicle to the creditors of the dealership would be a complete bar to any claimed recovery.
C. RECOMMENDATION
Judgement enter in favor of the Defendant on the complaint.
BARBARA M. QUINN ATTORNEY TRIAL REFEREE