645 P.2d 830

**FIRST NATIONAL BANK OF ARIZONA, a national banking association, Plaintiff-Appellee,**

v.

**Richard CARBAJAL, dba Baja Vans and Fidelity and Deposit Company of Maryland, a Maryland insurance corporation, Defendants-Appellants.**

No. 1 CA–CIV 4723.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 29, 1981.

Rehearing Denied Nov. 9, 1981.

Review Granted Nov. 24, 1981.

**316**

Streich, Lang, Weeks & Cardon by William S. Hawgood II, and Earl E. Weeks, Phoenix, for plaintiff-appellee.

Rawlins, Ellis, Burrus & Kiewit by Timothy C. Westfall, and David A. Clarke, Phoenix, for defendants-appellants.

## OPINION

HAIRE, Presiding Judge.

The issues presented in this appeal have resulted from a conflict between a cash seller's reclamation rights under Article 2 of the Uniform Commercial Code and the rights of a holder of an unperfected security interest under Article 9 of the Uniform Commercial Code.

The appellee First National Bank of Arizona (First National) filed its complaint for conversion in the Maricopa County Superior Court seeking to recover from appellant Richard Carbajal, doing business as Baja Vans (Carbajal), the fair market value of a certain customized van.[1] After exercising discovery procedures, both parties filed motions for summary judgment. The trial court granted First National's motion, in effect finding that the bank's security interest was superior to any reclamation rights which Carbajal might have had as a cash seller.

■ The factual background is essentially uncontroverted. At the inception of the events in question, Carbajal was engaged in the business of customizing vans and selling them at wholesale to various motor vehicle dealers doing business in Arizona. He had sold approximately twelve of these vehicles to Arizona Imports in the year prior to the transaction involved in this litigation. He testified that he expected payment on delivery and that on about one-half of the vans previously delivered, payment had been made on the same day. The remaining vans were paid for shortly thereafter. On all transactions, Carbajal retained the certificates of title and registration slips in his possession until he was paid, in his own mind treating the transactions as cash sales.[2]

Carbajal was unable to state the exact date that he delivered the van in question

1. Co-appellant, Fidelity and Deposit Company of Maryland was Carbajal's surety and the parties have treated the co-appellant's liability as being completely governed by a determination of the rights of Carbajal.

2. Carbajal does not claim any retained security interest pursuant to the provisions of A.R.S. Title 44, Chap. 14, Art. 9 (A.R.S. § 44–3101, *et seq.*, U.C.C. § 9–101 *et seq.*). The mere reten-

to Arizona Imports. However, the record is clear that he expected, but did not receive, payment of the purchase price upon delivery. Even though Arizona Imports did not pay at the time of delivery, Carbajal left the van at Arizona Import's place of business, retaining in his possession the unendorsed certificate of title and registration slip.

Thereafter, on June 13, 1977, Arthur and Mary Renner purchased the van in question from Arizona Imports. As a part of the transaction, the Renners executed and delivered to Arizona Imports a purchase money security agreement pursuant to which Arizona Imports retained a security interest in the vehicle. On the same day, the purchase money security agreement was assigned, without recourse, by Arizona Imports to First National for a good and valuable consideration paid by First National to Arizona Imports.

The general financing arrangements between First National and Arizona Imports were set forth in a written "Dealer Agreement". In that agreement, Arizona Imports warranted that on all automobile sales financed for Arizona Imports by First National, Arizona Imports would cause the issuance of certificates of title by the Motor Vehicle Division of the Arizona Department of Transportation evidencing the retail purchaser's ownership and showing the bank's security interest as a first lien. Since Arizona Imports had not received the certificate of title for the van from Carbajal, it did not comply with this contractual provision. Therefore, First National's security interest in the van was never perfected. *See* A.R.S. § 44–3123 C (U.C.C. § 9–302(3)); A.R.S. § 28–325. At all times pertinent to the legal issues involved in this litigation, First National was unaware that Carbajal had retained the van's certificate of title or that the bank's security interest had not

been perfected by Arizona Imports in accordance with the provisions of the dealer agreement.

After the purchase money security agreement had been assigned to First National, the Renners returned to Arizona Imports with the van, seeking to obtain a rescission or cancellation of their purchase. Although the record does not contain any evidence as to why the Renners were dissatisfied, or any justification for rescission, Arizona Imports apparently acquiesced in the proposed rescission and re-took possession of the van from the Renners. First National was not advised of this return of the van, and the purchase money security agreement held by First National was neither cancelled nor returned to the Renners.

Throughout this period Carbajal had repeatedly demanded payment for the van from Arizona Imports, but payment had not been received. However, there is nothing in the record to show that during this time Carbajal ever demanded that the van be returned to him. Finally, Carbajal received a telephone call from an employee of Arizona Imports telling him to come and pick up the van, that the deal was off and that "everything was falling apart".[3] Carbajal immediately did so. Although the record does not show with preciseness either the date that Carbajal initially delivered the van to Arizona Imports or the date that he finally re-took possession, it is clear that the elapsed time between Carbajal's delivery and repossession of the van was substantially in excess of ten days. At the time Carbajal reclaimed possession of the van, he had no knowledge of First National's claimed security interest in the van.

When First National did not receive the monthly payments called for in the purchase money security agreement from the Renners, its resulting investigation revealed the foregoing facts. First National then

tion in his possession of the vehicle's certificate of title and registration slip would not be effective in that regard. *See Noble v. Bonnett*, 118 Ariz. 397, 577 P.2d 248 (1978); *General Electric Credit Corp. v. Tidwell Industries, Inc.*, 115 Ariz. 362, 565 P.2d 868 (1977); A.R.S. § 44–3123 C (U.C.C. § 9–302(3)); A.R.S. § 28–325.

3. This was apparently in reference to the then-occurring financial collapse of Arizona Imports. Arizona Imports is not a party to this litigation.

made demand on Carbajal for return of the van, or, in the alternative, for payment of its value. Upon Carbajal's refusal, this litigation ensued. Since Carbajal had sold the van to a third party, the resulting judgment in favor of First National was for the fair market value of the van.

■ As we have previously stated, on this appeal Carbajal does not attempt to assert rights based upon his retention of the title certificate or as a holder of an Article 9 security interest. Rather, his entire claim is based upon the reclamation rights impliedly granted to an unpaid cash seller pursuant to the provisions of Article 2 of Arizona's Uniform Commercial Code. In presenting their arguments to this court the parties recognize certain legal principles enunciated by our Supreme Court in *General Electric Credit Corp. v. Tidwell Industries, Inc.,* 115 Ariz. 362, 565 P.2d 868 (1977). The first is that A.R.S. § 44–2355 B (U.C.C. § 2–507(2)) by implication gives a cash seller the right to reclaim goods from a nonpaying buyer. However, one important limitation on the seller's right to reclaim is that, prior to reclamation by the unpaid cash seller, the defaulting buyer has the power to transfer a good and valid title to a good faith purchaser for value, thereby defeating the unpaid cash seller's reclamation rights. In addition, it is clear that under the appropriate code definitions an Article 9 secured party can qualify as such a good faith purchaser for value. *See General Electric Credit Corp. v. Tidwell Industries, Inc., supra*; A.R.S. § 44–2348 (U.C.C. § 2–403); A.R.S. § 44–2208(19), (32) and (33) (U.C.C. § 1–201(19), (32) and (33)).

Carbajal concedes that under the facts of this case First National was a good faith purchaser for value at the time it took an assignment from Arizona Imports of the purchase money security agreement involved in this litigation. It follows from this concession that at that point Carbajal could not assert its reclamation rights against First National. Therefore the trial court correctly granted judgment in favor of First National unless events occurring subsequent to the time First National be-

came a good faith purchaser for value have diminished its rights as against Carbajal. In that regard, Carbajal contends that First National's security interest in the van ceased to exist when Arizona Imports allowed the Renners to return the van, with Arizona Imports and the Renners thereafter treating the purchase contract as cancelled or rescinded. Carbajal admits that this cancellation and return of the van occurred after Arizona Imports had assigned, without recourse, all its interest in the Renner purchase money security agreement to First National, and that First National did not consent to, or have knowledge of that cancellation. The assignment left Arizona Imports without any residual interest in the van, but nevertheless Carbajal urges that the dealer agreement between Arizona Imports and First National gave Arizona Imports the authority to rescind the contract, even after assignment. The pertinent paragraph of the dealer agreement provides:

> "6. In the event that a purchaser [here the Renners] exercises a lawful right to cancel or rescind any contract sold to Bank, Dealer [Arizona Imports] agree immediately to: notify Bank of said cancellation or recission; [sic] repurchase said contract from Bank; and refund to the purchaser all monies and/or property to which said purchaser is by law entitled."

■ In response to this contention, First National points out that paragraph 6 of the dealer agreement does not purport to give Arizona Imports any authority to gratuitously rescind or cancel a contract sold to the bank, but, rather, its provisions come into play only when a *purchaser* from Arizona Imports exercises *a lawful right* to cancel or rescind. First National urges that there is nothing in the record to indicate that the Renners were exercising a "lawful right" to cancel or rescind the contract when the van was returned to Arizona Imports. We agree, but more importantly, we note that the remaining provisions of paragraph 6 were not complied with by Arizona Imports so as to negate any rights First National may have acquired as a good faith

purchaser from Arizona Imports. First National was neither notified of the purported cancellation or rescission, nor did Arizona Imports re-purchase the contract and residual interest in the van from First National. Under these circumstances, it is our opinion that, as between Arizona Imports and First National, the purported rescission was ineffective to cut off First National's rights as a good faith purchaser and, as against First National, Arizona Imports did not re-acquire rights in the van which it had previously assigned to First National. Rather, First National remained a good faith purchaser for value who had acquired a valid interest in the van by the assignment from Arizona Imports, thereby defeating the reclamation rights of the unpaid cash seller, Carbajal. *General Electric Credit Corp. v. Tidwell Industries, Inc., supra.*

Carbajal next contends that even if the continued existence of First National's security interest in the van is assumed, the security interest was never perfected, and therefore Carbajal's reclamation right must be accorded priority because he perfected that right by reclaiming possession of the van. Carbajal thus asserts priority pursuant to the provisions of A.R.S. § 44–3133 D (U.C.C. § 9–312(5)). The fundamental premise underlying Carbajal's priority argument is the assumption that an unpaid seller's Article 2 reclamation right constitutes the type of security interest which can gain priority over a conflicting interest by compliance with the "perfection" provisions of Article 9 of Arizona's Uniform Commercial Code. *See* A.R.S. § 44–3126 (U.C.C. § 9–305). We reject that premise.

Although several courts have in a broad sense categorized the unpaid seller's Article 2 reclamation right as a "security interest" under the code,[4] we are not aware of any decision which has held that the interest in goods obtained by an Article 9 secured creditor qualifying as a good faith purchaser for value has been nullified because the unpaid

seller had "perfected" his interest by reclaiming the goods prior to the time that the good faith purchaser for value had perfected his security interest under appropriate statutory provisions. In fact, most courts which have considered the question have held that the unpaid seller's Article 2 reclamation right is not a security interest subject to perfection under Article 9 of the Uniform Commercial Code. *See Guy Martin Buick, Inc. v. Colorado Springs National Bank,* 184 Colo. 166, 519 P.2d 354 (1974); *In re Mel Golde Shoes, Inc.,* 403 F.2d 658 (6th Cir. 1968); *English v. Ford,* 17 Cal.App.3d 1038, 95 Cal.Rptr. 501 (1971); *Ranchers and Farmers Livestock Auction Co. v. First State Bank,* 531 S.W.2d 167 (Tex.Civ.App. 1975); Wallach, *The Unpaid Seller's Right to Reclaim Goods: The Impact of the Uniform Commercial Code and the Bankruptcy Acts of 1898 and 1978,* 34 Ark.L.Rev. 252, 259 (1980).

In *Guy Martin Buick, Inc. v. Colorado Springs National Bank, supra,* in an effort to establish priority in certain automobiles over a bank's unperfected security interest, the unpaid cash seller presented the same argument made by Carbajal here, that is, that an unpaid cash seller's reclamation right under Article 2 was a species of security interest which gained priority over the bank's unperfected security interest when the seller allegedly "perfected" his reclamation right by physically reclaiming the automobiles. The Colorado court rejected the premise that the seller's reclamation right could gain priority through Article 9's security interest perfection provisions, reasoning as follows:

> "The right to reclaim created by C.R.S. 1963, 155–2–507(2) is a right to undo the transaction, not a right to 'secure' payment of the price as required by the definition of 'security interest' under C.R.S. 1963, 155–1–201(37). *Cf. Bloch v. Mill Factors Corp.,* 119 F.2d 536 (2d Cir.

---

4. Some courts have even alternatively upheld the rights of a subsequent good faith purchaser for value against the reclamation rights of an unpaid seller upon the basis that the unpaid seller's "security interest" was unperfected.

*See, e.g., General Electric Credit Corp. v. Tidwell Industries, Inc.,* 115 Ariz. 362, 565 P.2d 868 (1977); *Matter of Samuels & Co., Inc.,* 526 F.2d 1238 (5th Cir.), *cert. den.,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976).

1941). *See* 1 Gilmore, Security Interests in Personal Property § 11.1 (1965). The right to reclaim is not a species of interest in the goods which is the result of a transaction 'intended to create a security interest' and is not created by contract as contemplated within the meaning of C.R.S. 1963, 155–9–102. Moreover, C.R.S. 1963, 155–2–702(3) states that successful reclamation 'excludes all other remedies,' and the creation of a security interest out of the right to reclaim might allow recovery which would be greater than the mere recovery of goods originally transferred." [5] 184 Colo. at 175–76, 519 P.2d at 359.

While we regard the Colorado court's reasoning as fundamentally sound, there are additional reasons for rejecting Carbajal's perfection argument, even if we assume that the unpaid seller's reclamation right initially constituted an Article 2 security interest.

Security interests under the article governing sales (Article 2) are generally subjected to the requirements of Article 9, with certain limited exceptions, as follows:

"§ 44–3113. Security interests arising under article on sales

"A security interest arising solely under the article on sales (article 2) is subject to the provisions of this article except that to the extent that and *so long*

*as the debtor does not have or does not lawfully obtain possession of the goods*:

"1. No security agreement is necessary to make the security interest enforceable; and

"2. No filing is required to perfect the security interest; and

"3. The rights of the secured party on default by the debtor are governed by the article on sales (article 2)." (Emphasis added).

■ The exceptions set forth in A.R.S. § 44–3113 do not relieve Article 2 security interests from Article 9's requirement of a signed security agreement [6] in situations where the secured party is not in possession of the collateral pursuant to agreement. As stated in the Uniform Commercial Code's Comment 3 to U.C.C. § 9–113 (A.R.S. § 44–3113):

"3. These limitations on the applicability of this Article [Article 9] to security interests arising under the Sales Article are appropriate only so long as the debtor does not have or lawfully obtain possession of the goods. Compare Section 56(b) of the Uniform Sales Act. *A secured party who wishes to retain a security interest after the debtor lawfully obtains possession must comply fully with all the provisions of this Article . . . .*" (Emphasis added).

---

5. In support of the conclusion in *Guy Martin Buick, Inc.*, that an unpaid seller's reclamation rights under Article 2 were not intended by the code drafters to constitute Article 2, "security interest" we note that the list of Article 2 security interests found in comment 1 to U.C.C. § 9–113 (A.R.S. § 44–3113) does not include the seller's reclamation right impliedly granted in Article 2. As pointed out by one commentator, the listed Article 2 security interests differ fundamentally from the unpaid seller's right to reclaim goods. The existence of the listed Article 2 security interests depends upon the seller's possession of the goods, whereas the existence of the seller's right to reclaim goods stems from his non-possession. *See* Mann & Phillips, *The Cash Seller Under the Uniform Commercial Code*, 20 Boston College L.Rev. 370, 390–91 (1979).

6. A.R.S. § 44–3116 A (U.C.C. § 9–203(1)) provides:

"A. Subject to the provisions of § 44–2617 on the security interest of a collecting bank and § 44–3113 on a security interest arising under the article on sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

"1. The collateral is in the possession of the secured party pursuant to agreement, *or the debtor has signed a security agreement* which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

"2. Value has been given; and

"3. The debtor has rights in the collateral."

(Emphasis added).

Here, no security agreement was ever given by Arizona Imports to Carbajal.[7] Therefore, upon the relinquishment of possession to Arizona Imports, Carbajal was relegated to the reclamation rights given him under Article 2. For the reasons set forth above, we hold that this right of reclamation could not be exercised ("perfected") by physically reclaiming the goods so as to thereby gain priority over intervening rights obtained pursuant to A.R.S. § 44–2348 A(3) (U.C.C. § 2–403(1)(c)) by a good faith purchaser for value. The rights granted to the cash seller by A.R.S. § 44–2355 B (U.C.C. § 2–507(2)) making the buyer's right to the goods conditional upon payment, even after delivery, are applicable only as between the buyer and seller and not as to a third person having the status of a good faith purchaser for value. *Evans Products Co. v. Jorgensen*, 245 Or. 362, 421 P.2d 978 (1966). The Uniform Commercial Code's Comment 3 to this section emphasizes this fact:

> "3. Subsection (2) deals with the effect of a conditional delivery by the seller and in such a situation makes the buyer's 'right as against the seller' conditional upon payment. *These words are used as words of limitation to conform with the policy set forth in the bona fide purchase sections of this Article.* Should the seller after making such a conditional delivery fail to follow up his rights, the condition is waived. The provision of this Article for a ten day limit within which the seller may reclaim goods delivered on credit to an insolvent buyer is also applicable here." (Emphasis added).

The "bona fide purchase sections of this article", give the buyer with a voidable title the "power to transfer a good title to a good faith purchaser for value", and this power exists even though "[i]t was agreed that the transaction was to be a 'cash sale'". *See* A.R.S. § 44–2348 A (3) (U.C.C. § 2–403(1)(c)). Thus we need look no further than to the provisions of A.R.S. § 44–2348 A to determine cash sale priority

questions involving the rights of the cash seller against third parties who have acquired interests in the goods and occupy the status of good faith purchasers for value. Here, since First National's unperfected security interest is in fact indistinguishable from a perfected one with respect to satisfying the code requirements of purchase, value and good faith, it satisfies the requirements of A.R.S. § 44–2348 A. Therefore, under the holding of the Arizona Supreme Court in *General Electric Credit Corp. v. Tidwell Industries, Inc., supra,* it must be concluded that First National was a good faith purchaser for value with an interest in the van superior to the claim of the unpaid cash seller, Carbajal.

One further comment is in order concerning the Arizona Supreme Court's opinion in *General Electric Credit Corp. v. Tidwell Industries, Inc., supra.* After first deciding in favor of the Article 9 secured creditor by concluding that the creditor was a good faith purchaser for value and that, pursuant to A.R.S. § 44–2348 A, its claim took preference over the claim of the unpaid seller, the court then stated:

> "By retaining 'title' to the mobile homes, Tidwell [unpaid cash seller] merely reserved for itself an unperfected purchase money security interest, A.R.S. § 44–2346, and under the provisions of A.R.S. § 44–3122, G.E.C.C.'s [Article 9 secured party] perfected security interest in the 16 mobile homes takes priority over Tidwell's unperfected security interest in the same collateral: ..." 115 Ariz. at 365, 565 P.2d at 871.

Carbajal contends that by this language the Arizona Supreme Court recognized that a cash seller's reclamation right constituted a security interest subject to perfection by possession, and that since he was the first to perfect, he has priority over the bank's unperfected security interest. When the court's comment is read in context, it is obvious that the court did not intend to convey the impression that an unpaid cash

---

7. Such an agreement would have been necessary to create the type of security interest urged by Carbajal. *See Evans Products Co. v.*

*Jorgensen,* 245 Or. 362, 367, 421 P.2d 978, 981 (1966).

seller's reclamation right, in and of itself, constituted a "purchase money security interest" under the code which could be perfected by reclaiming the goods. Rather, the court was merely giving expression to the concept that the result favoring the good faith purchaser for value was not unduly harsh, since the unpaid cash seller was not initially without a means of protecting itself by complying with the code formalities relating to the creation of a purchase money security interest, and then perfecting that purchase money security interest before the goods came into the buyer's possession. Despite the broad language used by the *Tidwell* court, it is clear from its extensive quotation from *Evans Products v. Jorgensen, supra*, that it recognized that the reclamation right given by Article 2 to the unpaid cash seller did not, in and of itself, result in the creation of a code-recognized purchase money security interest without the necessity of compliance with code formalities in that regard.[8]

We therefore hold that the trial judge correctly granted summary judgment to First National upon the basis that First National was a good faith purchaser for value with an interest superior to Carbajal's cash seller's right to reclaim. In view of the result we reach, we need not consider First National's further contention that Carbajal lost any rights which he might have had as an unpaid cash seller because he failed to make any attempt to reclaim the van within ten days after delivery. Likewise, since neither party has raised the issue, we have not considered whether, in view of the provisions of A.R.S. § 28–325

governing the obtaining of security interests in motor vehicles, perfection of such security interests could ever be accomplished by merely taking possession of the vehicle. *See Milwaukee Mack Sales, Inc. v. First Wisconsin National Bank*, 93 Wis.2d 589, 287 N.W.2d 708 (1980).

The judgment is affirmed.

JACOBSON and EUBANK, JJ., concur.

---

**8.** In *General Electric Credit Corp. v. Tidwell Industries, Inc.*, the court quoted with approval from *Evans Products v. Jorgensen* as follows:

" 'If defendants' intention was to retain title to the veneer after delivery and until cash was paid, and we will assume that was their intention, *they could have reserved a 'security interest' in the veneer and had priority over Evans.* ORS 79–3120(3) gives one with a purchase money security interest priority over an inventory financier when certain steps have been taken.

\*    \*    \*    \*    \*    \*

'Defendants did not attempt *to create nor perfect* any purchase money security interest

in the veneer (that was the only interest they could reserve when delivery was made) and, therefore, Evans' security interest must prevail unless another section of the UCC gives priority to defendants. ORS 79.2010.' *Evans Products Co. v. Jorgensen*, 245 Or. 362, 367, 421 P.2d 978, 981 (1966).' "

As was the case in *Tidwell*, the Oregon court concluded that the cash seller's reclamation rights could not prevail against the interest of an Article 9 secured creditor where the cash seller had not perfected a purchase money security interest in compliance with the Uniform Commercial Code.