645 P.2d 778

**FIRST NATIONAL BANK OF ARIZO-NA, a national banking association, Plaintiff-Appellee,**

v.

**Richard CARBAJAL, dba Baja Vans and Fidelity and Deposit Company of Maryland, a Maryland insurance corporation, Defendants-Appellants.**

No. 15739–PR.

Supreme Court of Arizona, In Banc.

April 6, 1982.

Rehearing Denied May 25, 1982.

Streich, Lang, Weeks & Cardon by William S. Hawgood II, Earl E. Weeks, Phoenix, for plaintiff-appellee.

Rawlins, Ellis, Burrus & Kiewit by Timothy C. Westfall, David A. Clarke, and Lewis & Roca by Paul G. Ulrich, Phoenix, for defendants-appellants.

CAMERON, Justice.

The First National Bank of Arizona filed a complaint against defendant Richard Carbajal, doing business as Baja Vans (hereinafter Baja), for the unlawful conversion of a certain customized van. The trial court granted summary judgment in favor of First National, and Baja appealed to Division One of the Court of Appeals. Finding the dispute governed by the Uniform Commercial Code, the Court of Appeals recognized the conflict as one between a cash seller's reclamation rights under Article 2 (A.R.S. § 44–2301 et seq.) and the rights of a holder of an unperfected security interest under Article 9 (A.R.S. § 44–3101 et seq.). The Court of Appeals held that First National's Article 9 unperfected purchase money security interest entitled it to priority over Baja's Article 2 reclamation rights and summary judgment in favor of First National was affirmed. *First National Bank of Arizona v. Carbajal,* 132 Ariz. 315, 645 P.2d 830 (App.1981). We accepted Baja's petition for review to correct what we believe to be a misstatement of the law regarding a cash seller's security interest. We have jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer the following questions on appeal:

1. To what extent does the non-compliance with Arizona's Motor Vehicle Registration Code affect the rights of the parties?

2. What are the rights of a cash seller under Article 2 of the Uniform Commercial Code?

3. What are the rights of a seller under Article 9 of the Uniform Commercial Code?

The facts necessary for a determination of these issues are as follows. Baja Vans is in the business of customizing vans and selling them wholesale to motor vehicle dealers in Arizona. Sometime in the summer of 1977, Baja delivered a customized 1976 GMC van to Arizona Imports, a licensed motor vehicle dealer. In the preceding year, Baja had delivered approximately 12 vans to Arizona Imports. Of these vans, about half were paid for on the same day as delivery and the remainder were paid for shortly thereafter. Until paid, it was Baja's practice to retain the certificates of title and registration slips to the vans. Upon delivery of the van in question, Arizona Imports did not immediately tender pay-

ment, and Baja therefore retained the various documents of ownership.

On 13 June 1977, Arthur and Mary Renner purchased the van from Arizona Imports. As part of the transaction, the Renners executed and delivered to Arizona Imports a purchase money security agreement pursuant to which Arizona Imports retained a security interest in the vehicle. On the same day, the purchase money security agreement was assigned by Arizona Imports to the First National Bank of Arizona for consideration and without recourse. Sometime thereafter, for reasons which do not appear in the record, the Renners returned the van to Arizona Imports. During this time, First National had no knowledge that the title documents to the vehicle had not been delivered to Arizona Imports by Baja or that the Renners had returned the van and revoked their acceptance of the vehicle. Likewise, Baja did not know that Arizona Imports had sold the vehicle and that chattel paper evidencing a purchase money security interest in the van had been issued by the Renners in favor of Arizona Imports and subsequently assigned to First National.

Throughout this period, Baja had been making repeated demands for payment from Arizona Imports. Finally, Baja received a telephone call from an employee of Arizona Imports who reported that the deal was off and that Baja had better come pick up the van because "everything was falling apart." By this, the employee was referring to the impending financial collapse of Arizona Imports. Baja took possession of the van and subsequently sold the vehicle in the normal course of business.

When First National did not receive the monthly payments from the Renners, an investigation was made which revealed that Baja had reclaimed the van. First National then made demand on Baja for return of the van, or, in the alternative, for payment of its value. Upon Baja's refusal, this litigation ensued. Because Baja had sold the van, the resulting judgment in favor of First National was for the fair market value of the van. Baja appealed and the Court of Appeals affirmed. We granted Baja's petition for review.

## COMPLIANCE WITH THE MOTOR VEHICLE REGISTRATION CODE

Article 9 of the Uniform Commercial Code provides that if a state has a central filing statute, that statute will prevail over the provisions for security interests that arise under the Uniform Commercial Code:

"C. The filing of a financing statement otherwise required by this article is not necessary or effective to perfect a security interest in property subject to:

"2. A statute of this state (other than § 41–3140) which provides for central filing of, or which requires indication on a certificate of title of, such security interest in such property, including § 28–325, which requires indication thereof on a certificate of title for a vehicle required to be titled and registered under § 28–302 and for a mobile home required to be titled under § 42–643; but during any period in which such property subject to such a statute is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this article (§ 44–3140 through 44–3146.02) apply to a security interest in that collateral created by him as debtor;

"D. Compliance with a statute or treaty described in subsection C is equivalent to the filing of a financing statement under this article, and a security interest in property subject to the "statute or treaty can be perfected only by compliance therewith except as provided in § 44–3103 on multiple state transactions. Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; in other respects the security interest is subject to this article." A.R.S. § 44–3123(C) & (D) [U.C.C. § 9–302(3)(b) ].

▮ Arizona has such a central filing system, but neither First National nor Baja complied with the detailed filing and registration provisions of Arizona's Motor Vehicle Registration Code. A.R.S. § 28–301 et

seq. A.R.S. § 28–325 provides for priority of liens. Subsections B through F of that statute establish a detailed process by which a security interest in an automobile is perfected. A perfected security interest will not arise unless the lien appears on the certificate of title to give constructive notice of encumbrances to all subsequent purchasers of the vehicle. The only exceptions to the filing and registration requirements are security interests dependent upon possession and security interests in inventory. A.R.S. § 28–325(E), (F) & (I); *General Electric Credit Corp. v. Tidwell Industries, Inc.,* 115 Ariz. 362, 565 P.2d 868 (1977).

■ For a party seeking to perfect a security interest in a motor vehicle, these provisions are mandatory and failure to comply with the motor vehicle code results in the parties having no rights to enforce under that code. Since neither party followed the requirements of the Motor Vehicle Registration Code, neither party may claim a superior interest under that code. This does not mean, however, that the parties may not rely on the Uniform Commercial Code for guidance. On the contrary, since neither party complied with the provisions of the Motor Vehicle Registration Code, they must rely exclusively on the Uniform Commercial Code as adopted in Arizona to determine their rights. A.R.S. § 44–2201 et seq.

### RIGHTS OF THE CASH SELLER UNDER ARTICLE 2 OF THE UNIFORM COMMERCIAL CODE

Baja's first argument is based on its rights as an aggrieved cash seller under the Uniform Commercial Code's Article 2 (A.R.S. § 44–2301 et seq.) on sales. At common law, a cash seller had greater rights than a credit seller by virtue of the cash seller's retention of title until the price of the goods was paid for. A cash purchaser who was somehow able to snatch the goods from the seller without paying or who more likely paid for the goods with a bad check, was treated no better than a thief. As Professor Gilmore has stated:

"The courts have held * * * in the cash sale situation that something more serious than 'mere' fraud is involved, something approaching theft—'larceny by trick or device' as the time-honored phrase runs—and that consequently the defaulting cash sale buyer gets no title, and can transfer none to a good faith purchaser." The Commercial Doctrine of Good Faith Purchase, 63 Yale L.J. 1057, 1060 (1954).

The cash seller had the power to reclaim goods even though they had been resold by the buyer to a good faith purchaser because the buyer could receive no greater rights than his seller. A credit seller, however, gave his buyer voidable title to the goods in the buyer's possession, and a credit seller could not reclaim the goods from a bona fide purchaser, but could only sue the buyer for the purchase price. The preference given to a cash seller resulted in unfairness to the subsequent purchasers from defaulting cash buyers. Time and effort had to be taken in order to obtain documentation of the title to the goods in question and this restricted the free flow of trade, something the Uniform Commercial Code sought to prevent. See Note, The Rights of Reclaiming Cash Sellers When Contested By Secured Creditors of the Buyer, 77 Columbia L.Rev. 934 (1977); Note, The Cash Seller's Right of Reclamation Versus the Secured Party's Floating Lien: Who Is Entitled to Priority?, 35 Wash. & Lee L.Rev. 277 (1978).

■ The Uniform Commercial Code abolished this common law distinction between cash and credit sales, providing that a purchaser gains voidable title even though the transaction is a cash sale. A.R.S. § 44–2348 [U.C.C. § 2–403].

"The Uniform Commercial Code has changed this rule by favoring the good faith purchaser over the aggrieved seller, A.R.S. § 44–2348(A), and the defaulting buyer has the power to transfer title to a good faith purchaser even though he lacks the right to do so. A.R.S. § 44–2355(B). * * * " *General Elec. Credit Corp. v. Tidwell Industries, supra,* 115 Ariz. at 365, 565 P.2d at 871.

A.R.S. § 44–2381(B) [U.C.C. § 2–702(2)] provides that an aggrieved seller is entitled to reclaim only if "the buyer has received goods on credit while insolvent" and the seller has exercised his right to reclaim "within ten days" after the buyer has received the goods. Although A.R.S. § 44–2381(B) [U.C.C. § 2–702(2)] deals with credit sales, the rights of a cash seller are likewise bound by the insolvency and ten day limitations. See A.R.S. § 44–2355 and Official Comment 3 to U.C.C. § 2–507. Although Arizona Imports later became insolvent, the record does not show that Arizona Imports was insolvent when it took delivery of the van. It would also appear that Baja did not reclaim the van within the ten day time period. Baja then had no rights arising out of Article 2 that would allow Baja to assert a superior interest in the van against First National as a good faith purchaser after the ten day period had expired. A.R.S. § 44–2381(B) [U.C.C. § 2–702(2)]. Baja is not entitled to relief under Article 2 (A.R.S. § 44–2301 et seq.) of the Uniform Commercial Code.

## RIGHTS OF THE SELLER UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE

■ But Baja maintains that its right to reclamation under Article 2 of the Uniform Commercial Code is a species of security interest governed by the priority provisions of Article 9. This interest, Baja contends, was perfected when it retook possession of the van after learning that Arizona Imports would not complete the cash sale and is superior to any unperfected purchase money security interest First National might have had at the time Baja reclaimed the van. We do not agree.

■ Admittedly, the Uniform Commercial Code provides that Baja, by retaining title, reserved for itself a security interest in the van. This characterization first appears in Article 2 and is affirmed in Article 9. A.R.S. §§ 44–2346 & 44–3113 [U.C.C. §§ 2–401 & 9–113]. Baja's argument that it perfected its security interest by possession alone ignores the provision of the code

that before any security interest can be perfected, it must first "attach." Under Article 9, "attach" is a word of art that contemplates the satisfaction of a series of requirements to create an enforceable security interest:

"A. * * * a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

1. The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

2. Value has been given; and

3. The debtor has rights in the collateral.

"B. A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection A have taken place unless explicit agreement postpones the time of attaching." A.R.S. § 44–3116(A) & (B) [U.C.C. § 9–203(1) & (2)].

■ The signed writing requirement of A.R.S. § 44–3116 is similar to a statute of frauds and merely requires that for the security interest to attach, it must be reduced to writing and signed by the debtor. Any written agreement, including a bill of sale, will suffice for the interest to attach as long as it has been signed by the debtor and contains a description of the collateral. See 2 A. Squillante & J. Fonseca, The Law of Modern Commercial Practices §§ 11:22–11:39 (1981). Baja and Arizona Imports never created such a written security agreement, and Baja was never in possession of the van at a time Arizona Imports held rights in the collateral. Lacking these prerequisites, Baja's interest could never attach and therefore could not have been perfected by possessing the van.

■ But Baja contends that even if its security interest has not attached or been

perfected, First National does not have an enforceable security interest because its debtor, Arizona Imports, did not have sufficient rights in the collateral to allow First National's interest to attach. A.R.S. § 44–3116(A) [U.C.C. § 9–203(1)(C)]. We do not agree. When Baja delivered the van without a written agreement signed by Arizona Imports, Arizona Imports obtained sufficient "rights" and "power" to encumber the van, A.R.S. § 44–3116 [U.C.C. § 9–203], and therefore First National's security interest attached. See J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code § 23–4 (1972); *Galleon Industries, Inc. v. Lewyn Machine Co.*, 50 Ala.App. 334, 279 So.2d 137 (1973).

The priority provisions of A.R.S. § 44–3133(D)(3) [U.C.C. § 9–312(5)(b)] dictate that when neither party perfects his interest, priority goes to the first party to attach. Because First National's security interest attached and Baja's did not, First National is entitled to the proceeds of the van. The trial court was correct in granting the petitioner's motion for summary judgment. This may seem unfair to Baja, but it should be remembered that the bank did everything it was required to do in order to have its security interest attach, while Baja failed to insist upon a written agreement signed by Arizona Imports. Baja failed to take advantage of the code provisions for attachment and perfection which would have given it priority over First National.

We note, however, that the opinion of the Court of Appeals in this case stated:

"One further comment is in order concerning the Arizona Supreme Court's opinion in *General Electric Credit Corp. v. Tidwell Industries, Inc.*, supra. After first deciding in favor of the Article 9 secured creditor by concluding that the creditor was a good faith purchaser for value and that, pursuant to A.R.S. § 44–2348 A, its claim took preference over the claim of the unpaid seller, the court then stated:

'By retaining "title" to the mobile homes, Tidwell [unpaid cash seller] merely reserved for itself an unperfected purchase money security interest, A.R.S. § 44–2346, and under the provisions of A.R.S. § 44–3122, G.E.C.C.'s [Article 9 secured party] perfected security interest in the 16 mobile homes takes priority over Tidwell's unperfected security interest in the same collateral....' 115 Ariz. at 365, 565 P.2d at 871.

"*** When the court's comment is read in context, it is obvious that the court did not intend to convey the impression that an unpaid cash seller's reclamation right, in and of itself, constituted a 'purchase money security interest' under the code which could be perfected by reclaiming the goods. Rather, the court was merely giving expression to the concept that the result favoring the good faith purchaser for value was not unduly harsh, since the unpaid cash seller was not initially without a means of protecting itself by complying with the code formalities relating to the creation of a purchase money security interest, and then perfecting that purchase money security interest before the goods came into the buyer's possession. Despite the broad language used by the *Tidwell* court, it is clear from its extensive quotation from *Evans Products v. Jorgensen* [245 Or. 362, 421 P.2d 978], "*supra*, that it recognized that the reclamation right given by Article 2 to the unpaid cash seller did not, in and of itself, result in the creation of a code-recognized purchase money security interest without the necessity of compliance with code formalities in that regard. (footnote omitted)." 132 Ariz. at 322, 645 P.2d at 837.

We disagree with the Court of Appeals insofar as it suggests that under the facts in the instant case the seller Baja never had a security interest in the van. A security interest is no more than the right of a creditor to attach and perfect an interest in the property superior to the interest of any other. It is important to recognize that Baja did have a security interest, for only then could Baja compete for priority to

the van by attaching and perfecting its security interest. See *In re Samuels Co. v. Mahon*, 526 F.2d 1238 (5th Cir. 1976); The Cash Seller's Right of Reclamation Versus the Secured Party's Floating Lien: Who Is Entitled To Priority?, 35 Wash. & Lee L.Rev. 277 (1978). In the instant case, the retention of the title documents was a security interest. Had there been a written agreement between Baja and Arizona Imports describing the van and signed by Arizona Imports, the security interest would have attached and would have been perfected by Baja's repossession of the van. Since there was no attachment and consequently no perfection, the rights of Baja must give way to the rights of First National, whose security interest did attach and defeat Baja's security interest.

Opinion of the Court of Appeals vacated. Judgment affirmed.

HOLOHAN, C.J., GÓRDON, V.C.J., and HAYS and FELDMAN, JJ., concur.