In re COAST TRADING COMPANY, INC., Debtor.

Cliff DOPPS, Plaintiff,

v.

COAST TRADING COMPANY, INC., the Oregon Bank, Continental Grain Co., Ralston Purina Co., and the Bank of Nova Scotia, Defendants.

McCARY FARMS, INC., a Washington corporation, Plaintiff,

v.

COAST TRADING COMPANY, INC., the Oregon Bank, and Ralston Purina Co., Defendants.

Jake PISTER, dba Pister Farms, Plaintiff,

v.

COAST TRADING COMPANY, INC., the Oregon Bank, Ralston Purina Co., and National Food Corporation, Defendants.

RALSTON PURINA CO., a Missouri corporation, Plaintiff,

v.

COAST TRADING COMPANY, INC.; the Oregon Bank; the Bank of Nova Scotia; Cliff Dopps; Jake Pister, dba Jake Pister Farms; and McCary Farms, Inc., a Washington corporation, Defendants.

Bankruptcy No. 382–00974.
Adv. Nos. 82–0311, 82–0312, 82–0316 and 82–0507.

United States Bankruptcy Court, D. Oregon.

Dec. 23, 1982.

P. Anne Klassner, Portland, Or., for debtor.

Gilbert Sussman, Portland, Or., for Oregon Bank.

Kevin Padrick, Portland, Or., for Bank of Nova Scotia.

Barry Adamson, Portland, Or., for Ralston Purina.

Victor Van Koten, Portland, Or., for plaintiffs, Dopps, McCary & Pister.

FOLGER JOHNSON, Bankruptcy Judge.

This case involves three Washington growers who sold grain to the defendant, Coast Trading Company, and which grain was in turn sold by Coast Trading to Ralston Purina. Ralston did not pay for the grain as it was in doubt as to which party was entitled to receive payment. Coast brought suit against Ralston to obtain payment, and in response, Ralston filed an interpleader action and paid $29,762.24 into this court. Ralston was then relieved of any further liability, and its attorney was awarded $800.00 out of the money paid in as a fee for the interpleader.

Some of the grain was delivered to Coast at its facilities in the state of Washington, and some grain was sold to Coast FOB the grower's farm in Washington. It was admitted in the latter case that the ten-day reclamation period started to run from the date Coast picked up the grain from the grower's farm regardless of what date it reached Coast's storage facility.

It was also admitted that upon delivery of the grain to Coast, The Oregon Bank, which held a perfected security interest in Coast's inventory, acquired a lien on such grain as a good faith purchaser for value which would be superior to the reclamation rights of the growers. It was also admitted that the Bank of Nova Scotia has a valid security interest in accounts receivable of Coast. Where the grain was still held by Coast when the reclamation demand was received within the ten-day period, the grower insofar as Coast was concerned would have been entitled to receive either the grain or, if later sold by Coast, the market value of such grain on the date reclamation demand was received subject, of course, to the intervening claim of the banks and possibly, in some cases, Production Credit Associations. There is no conflict, however, between the growers and the PCA's so that any payment made to a grower would be deemed payment to the appropriate PCA also.

If the reorganization plan of Coast Trading is accepted and confirmed by the court and the two banks are paid in full as a result thereof, some of the case will become moot. If, however, there is insufficient money to pay both banks, a marshaling question may arise under the agreement whereby the Bank of Nova Scotia was given a subordinate lien on the assets claimed by The Oregon Bank under its perfected security agreement. The parties are not asking the court to decide the entire case at this time in view of the various contingencies but have asked that the court determine whether, without regard to the secured creditors, the three growers would have a right to claim the proceeds from the resale of grain by Coast before receipt of the reclamation demand where such proceeds were deposited into the court and hence are clearly traceable.

Another issue which arises if the court determines that the reclaiming sellers have no right to the proceeds where the grain had already been sold, is whether such sellers are entitled to an administrative priority for the amount of such proceeds under 11 USC § 546(c)(2).

Neither the Uniform Commercial Code, §§ 2–507 and 2–702, which discuss the right to reclaim goods nor § 546 of the Bankruptcy Code grant a right to the proceeds from resale of those goods by the buyer. Where a right or interest in proceeds is recognized by the UCC, it is recognized expressly such as in § 9–306. See *Matter of Samuels Co., Inc.*, 526 F.2d 1238 (5th Cir. *en banc* 1976) wherein the sellers of cattle sought to reclaim cattle and assert a claim to the proceeds from the sale of the slaughtered cattle. The Court of Appeals in its final consideration of the case after an earlier reversal by the Supreme Court, held that sellers who could not reclaim goods could not then claim rights in proceeds. While § 9–306 recognizes an interest in proceeds on sale of collateral, the term "collateral" necessarily implies the existence of a security interest, and a seller's right to reclaim from an insolvent buyer is not a security interest, nor are the goods collateral. *Guy Martin Buick, Inc. v. Colorado Springs National Bank*, 184 Colo. 166, 519 P.2d 354 (1974); *First National Bank of Arizona v. Carabajal*, 132 Ariz. 263, 645 P.2d 778 (1982); *English v. Ralph Williams Ford*, 9 UCC 437, 17 Cal.App.3d 1038, 95 Cal.Rptr. 501 (1971); *In re American Food Purveyors, Inc.*, 17 UCC Rep. 436 (DCND Ga., Bankr.J.1974); *In re PFA Farmers Market Association*, 583 F.2d 992, 24 UCC Rep. 1176 (8th Cir.1978); *Ranchers and Farmers Livestock Auction Co. of Clovis, New Mexico v. First State Bank of Tulia, Texas*, 18 UCC Rep 236, 531 S.W.2d 167 (Tex.Civ.App.1975).

*In the matter of Flagstaff Foodservice Corp.*, 14 B.R. 462 (Bkrtcy.S.D.N.Y.1981), Judge Babbitt denied reclamation of proceeds, saying that "the tracing of specific funds attributable to specific sales is a formidable obstacle at best." It would have been easy for the court to have stated, if such were its view, that when proceeds are traceable they can be claimed and when they are not traceable they can not be claimed, but the court voiced no such conclusion, leaving only an implication floating in the air which is dispelled by the court's approval of the *Samuels* case which held against the reclaiming seller.

*Greater Louisville Auto Auction, Inc. v. Ogle Buick, Inc.*, 387 S.W.2d 17, 19, 2 UCC R.S. 344 (Ky.App.1965), which invoked the common law to impress a constructive trust on the proceeds was not a case arising in a bankruptcy and hence, was not concerned with § 546(c) of the Bankruptcy Code which provides:

"(c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—

(A) grants the claim of such a seller priority as an administrative expense; or

(B) secures such claim by a lien."

In bankruptcy a reclaiming seller's UCC rights are altered by this section, restricting the use of any common-law right to the goods themselves. *Kammerzell v. Coast Trading Co., Inc.,* No. 82–0446 (Bankr.Crt. D.Or., Oct. 1, 1982 oral opinion); *In re Contract Interiors,* 14 B.R. 670 (Bkrtcy.E.D. Mich.1981); *In re Original Auto Parts Distributors, Inc.,* 9 B.R. 469 (Bkrtcy.S.D.N.Y. 1981).

■ Section 546(c) gives a seller only a right to reclaim the goods. If the goods are still in the hands of the buyer at the time of reclamation and there is no intervening right of a secured creditor that would be superior to the seller's rights, the court must permit reclamation, unless the court finds that such goods are needed for the reorganization of the debtor and grants the seller instead an administrative expense priority or a lien on assets of the debtor to provide it adequate protection for its claim. If the buyer, before reclamation, has already sold the goods to a good faith purchaser for value, there is nothing to reclaim as the seller cannot demand a return of the goods from the ultimate purchaser. Since the seller has no right to the goods, he has no right to receive something in lieu of the goods. Whether the ultimate purchaser has yet paid for the goods or whether the proceeds paid by such purchaser can be clearly traced is immaterial. To the extent that *In re Western Farmers Association,* 6 B.R. 432 (Bkrtcy.W.D.Wash.1980), holds to the contrary this court disagrees with such holding. There are many growers with unsecured claims against Coast and none should be given a preference unless provided by statute. Section 546(c) is unambiguous in granting a right to possession of the goods only and should be held to mean what it plainly expresses. Equity is out of place here in attempting to create a right not implied in the statute.

Even if the claims of The Oregon Bank and the Bank of Nova Scotia are satisfied in full out of other assets, the plaintiff-growers, Cliff Dopps, McCary Farms and Jake Pister, being unable to reach the goods at the time of reclamation, have no right to the traceable proceeds received from a good faith purchaser for value for the resale of such goods, nor are they entitled to any administrative expense priority or lien under § 546(c)(2) in lieu of such goods.