IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WOODBRIDGE STRUCTURED FUNDING, LLC, a Delaware limited
liability company; and WALLACE THOMAS, JR., *Plaintiffs/Appellees*,

*v.*

ARIZONA LOTTERY; JEFF HATCH-MILLER, Director of the Arizona
Lottery, *Defendants/Appellees*,

*v.*

GENEX CAPITAL CORPORATION, *Intervenor/Appellant*.

No. 1 CA-CV 13-0043
FILED 5-13-2014

Appeal from the Superior Court in Maricopa County
No. CV2012-009751
The Honorable John Christian Rea, Judge

**AFFIRMED**

COUNSEL

Renaud Cook Drury Mesaros PA, Phoenix
By James L. Blair, Hoyt S. Neal, Kevin R. Myer
*Counsel for Plaintiffs/Appellees Woodbridge and Thomas*

Arizona Attorney General's Office, Phoenix
By Deanie J. Reh
*Counsel for Defendants/Appellees Arizona Lottery and Hatch-Miller*

Engelman Burger, PC, Phoenix
By Kevin M. Judiscak, Bradley D. Pack
*Counsel for Intervenor/Appellant*

---

## OPINION

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Diane M. Johnsen joined.

---

**O R O Z C O**, Judge:

**¶1**        Appellant, Genex Capital Corporation (Genex), appeals from the trial court's ruling denying its motion to intervene. The trial court also denied Genex's motion for reconsideration and relief from judgment. Genex argues the trial court erred in concluding Genex lacked a substantial interest in the outcome of the case. For the reasons discussed below, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Appellee Wallace Thomas, Jr. (Thomas) won a one million dollar prize from the Arizona Lottery (AZ Lottery) in October 2010. Thomas chose to receive his prize in twenty-five annual installments of $40,000. Several structured settlement companies subsequently approached Thomas and offered to pay him a lump sum in exchange for an assignment of the annuity payments (Lottery Payments). Thomas eventually negotiated both with Genex and Appellee, Woodbridge Structured Funding, LLC (Woodbridge), over such an assignment.

**¶3**        For purposes of review, we take the allegations of Genex's motion to intervene as true. *See, e.g.*, *Planned Parenthood Ariz., Inc. v. Am. Ass'n of Pro-Life Obstetricians & Gynecologists*, 227 Ariz. 262, 279, ¶ 53, 257 P.3d 181, 198 (App. 2011). On June 8, 2012, Thomas signed an agreement with Genex to assign his interest in the remaining twenty-three installments of the Lottery Payments in exchange for a lump sum payment of $428,148 from Genex. Later that day, however, Thomas emailed Genex to inform the company he wanted to cancel the agreement. Because Thomas did not receive a response to his email, on June 9, he faxed Genex a letter stating that he was canceling the agreement in order to "pursue other funding." Five days later, on June 14, Genex's president

2

left Thomas a voicemail that Genex did not accept Thomas's rescission notice and asserted that Thomas "had no right to cancel" the agreement. Genex attempted to perfect a security interest in its rights to the Lottery Payments on June 19, 2012, by filing a Uniform Commercial Code (UCC) Financing Statement (UCC-1 form) with the Arizona Secretary of State.

¶4        Meanwhile, Thomas and Woodbridge entered into a written agreement dated June 9, 2012, (Assignment Agreement) in which Thomas assigned to Woodbridge his interest in the remaining annual $40,000 payments, in exchange for a lump-sum cash payment of $430,000.

¶5        Thomas and Woodbridge filed a complaint against the AZ Lottery and Jeff Hatch-Miller, the Director of the AZ Lottery on June 26, 2012, requesting a court order pursuant to Arizona Revised Statutes (A.R.S.) section 5-563 (2012), which provides that a person may assign a lottery prize only after filing an affidavit with the trial court and receiving an appropriate order from the superior court (Approval Action).

¶6        On July 12, 2012, Genex filed a lawsuit alleging breach of contract by Thomas and tortious interference by Woodbridge with Genex's contractual relationship with Thomas (Damages Action).

¶7        Thomas and Woodbridge moved for summary judgment in the Approval Action on July 16, 2012.   With the motion, Thomas submitted the statutorily required affidavit stating that he (1) was over the age of majority and of sound mind; (2) had not made the decision to assign and sell his interest in his lottery prize under any duress; (3) was capable of making decisions in his own interest and of assessing his own best financial interests; (4) had received independent advice regarding the financial and tax implications of this [Assignment Agreement]; and (5) understood the terms of the [Assignment Agreement], including the Agreement's term that discounts the prize's present value.   Section 5-563.A.3(a) requires such an affidavit prior to a trial court's approval of an assignment of lottery winnings.   AZ Lottery did not oppose the motion. The trial court granted the motion for summary judgment and approved the Assignment Agreement on July 27, 2012.

¶8        Genex moved to intervene in the Approval Action alleging that because Woodbridge and Thomas failed to inform the trial court that Thomas had a prior contract with Genex to assign the Lottery Payments, the court should have denied the motion for summary judgment.  Genex asserted that it had a right to intervene in the Approval Action because it had a "direct interest in the Lottery [Payments], and the disposition of this

action without a determination of Genex's rights may . . . impair Genex's ability to recover the Lottery [Payments] to which it is lawfully entitled." Genex also moved to consolidate the Damages Action with the Approval Action, asserting that there were common questions of law and fact.[1] In response, Woodbridge argued that Genex's motion was untimely and made in bad faith because the underlying grounds submitted for the motion were false.

¶9            The trial court signed the final order granting Woodbridge and Thomas's motion for summary judgment on August 16, 2012. Thereafter, Genex filed a motion for reconsideration and relief from the trial court's order granting summary judgment. The trial court denied Genex's motion to reconsider and motion to intervene and consolidate.

¶10           Genex timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12 -120.21.A.1 (2003) and -2101.A.1 (Supp. 2013).

## DISCUSSION

I.      Genex's Motion to Intervene

¶11           A trial court shall grant a timely intervention of right when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Ariz. R. Civ. P. 24(a). We review de novo the denial of a a timely request for intervention of right. *Dowling v. Stapley*, 221 Ariz. 251, 269-70, ¶ 57, 211 P.3d 1235, 1253-54 (App. 2009).

¶12           The right of a third party to intervene in an action is controlled by Arizona Rule of Civil Procedure 24. *See Winner Enters., Ltd. v. Super. Ct. in and for Cnty. of Yavapai*, 159 Ariz. 106, 108, 765 P.2d 116, 118 (App. 1988). Genex asserts it had a right to intervene pursuant to Rule

---

[1]     On appeal, Genex does not challenge the trial court's denial of its motion to consolidate. We therefore do not address that issue.

24(a) because it claimed an interest relating to the Lottery Payments and its interest was not adequately protected by the parties to the action.[2]

**¶13**       Intervention of right is appropriate when the party applying for intervention meets all four of the following conditions:  (1) the motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must show that disposition of the action may impair or impede its ability to protect its interest; and (4) the applicant must show that the other parties would not adequately represent its interests.  *See Planned Parenthood Ariz.*, 227 Ariz. at 280, ¶ 60, 257 P.3d at 199.

A.       Interest Relating to the Property

**¶14**       Genex argues it "has asserted both a contractual right and the right as a secured creditor to receive the" Lottery Payments.  It contends that the June 8, 2012, agreement Thomas signed guaranteed Genex an interest in the Lottery Payments, which it argues was the "particular fund" at issue in the Approval Action.  We disagree.

**¶15**       For the purposes of intervention of right, an applicant must show it has such an interest in the case that the judgment would have a *direct* legal effect upon its rights.  *Dowling*, 221 Ariz. at 270, ¶ 58, 211 P.3d at 1254 (emphasis added).  A mere possible or contingent equitable effect is insufficient.  *Id.*; *see also Weaver v. Synthes, Ltd. (U.S.A.)*, 162 Ariz. 442, 447, 784 P.2d 268, 273 (App. 1989).

**¶16**       An Arizona lottery prize is not freely assignable.  *See* A.R.S. § 5-563.A.3 (2012).  A prize winner may assign his prize only pursuant to an appropriate judicial order and only if all of the following conditions are met:  (1) the prize winner provides an affidavit certifying that he is not acting under duress, is of sound mind, and has received outside financial and tax advice concerning the assignment; (2) the "assignee pays the prize winner a lump sum for all amounts that are due to the prize winner under the assignment agreement on or before the date that the assignment takes effect;" and (3) the "parties to the assignment pay a fee to the commission to defray the expenses incurred by the commission in processing the assignment."  *Id.*  Therefore, because a prize annuity is not freely

---

[2]       Genex also argued to the trial court that it should be allowed to intervene pursuant to Rule 24(b).  However, it does not raise this issue on appeal, and we therefore do not address it.

assignable, the assignee's interest in an assignment is contingent until the trial court has entered an appropriate order approving the assignment.

¶17          Genex's agreement with Thomas to assign the Lottery Payments gave it only a contingent interest in the annuity for the purposes of intervention.  Genex had neither commenced an action to obtain the required judicial order, nor received the appropriate judicial order.  Its contingent interest in the Lottery Payments was insufficient to constitute an interest in the case entitling it to intervention of right.  *See Weaver*, 162 Ariz. at 447, 784 P.2d at 273.

¶18          Furthermore, the judgment in this case did not foreclose Genex's ability to litigate its alleged breach of contract and tortious interference with a contractual relationship claims.  *See id*. at 448, 784 P.2d at 274; *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) ("Visa's ability to protect its interest will not be impaired or impeded *because* it is denied intervention in this case . . . . any harm to Visa's interests would result from FIFA's alleged conduct in breaching its contract with MasterCard and granting the sponsorship rights to Visa.").

### B.      UCC Security Interest

¶19          Moreover, Genex's reliance on the UCC-1 form it filed with the Arizona Secretary of State is unfounded.  A security interest is the right of a creditor to attach and perfect an interest in property, which is superior to the interest of any other.  *See First Nat. Bank of Ariz. v. Carbajal* (*Carbajal*), 132 Ariz. 263, 268, 645 P.2d 778, 783 (1982).  Genex simply did not have an enforceable, attached security interest in the Lottery Payments, and Genex certainly did not have a security interest superior to other creditors.  Under Article 9 of the UCC, a security interest "attaches to collateral when it becomes enforceable against the debtor with respect to the collateral."  A.R.S. § 47-9203.A (Supp. 2013).[3]  A security interest "is enforceable against the debtor and third parties with respect to the collateral only if": (1) the debtor has signed a security agreement containing the description of the collateral; (2) value has been given; and (3) the debtor has rights in the collateral.  *See id*. § 47-9203.B (UCC § 9-203(1)).  A security interest is not enforceable against the debtor until the security interest has attached, and it will not attach until all three events

---

[3]      We cite to the current version of the statute because no changes material to this opinion have occurred.

specified in § 47-9203.B have occurred. *Id.* Because Genex never gave Thomas value for the assignment, no security interest had attached. Genex cannot enforce an unattached security interest against Thomas, and a security interest that is unenforceable against a debtor is also unenforceable against a third party, such as Woodbridge. *See id.*; *see also Carbajal*, 132 Ariz. at 267, 645 P.2d at 782.

**¶20** Therefore, Genex cannot demonstrate its direct interest in the outcome of the Approval Action. Because it cannot demonstrate a direct interest in the outcome of this case, we need not address whether: (1) the motion to intervene was timely; (2) disposition of the action could have impaired or impeded Genex's ability to protect its interest; or (3) the other parties could protect Genex's interest.

II.     Rule 60(c)

**¶21** Genex argues the trial court abused its discretion by denying its request to vacate the judgment in the Approval Action. Rule 60(c) of the Arizona Rules of Civil Procedure permits the trial court to relieve a party from a final judgment or order on several grounds, including fraud, misrepresentation, or other misconduct of an adverse party. *See* Ariz. R. Civ. P. 60(c). Trial courts enjoy broad discretion when deciding whether to set aside judgments under Rule 60(c). *Panzino v. City of Phx.*, 196 Ariz. 442, 448, ¶ 19, 999 P.2d 198, 201 (2000). We review a trial court's denial of relief from judgment under Rule 60 for an abuse of discretion. *PNC Bank v. Cabinetry By Karman, Inc.*, 230 Ariz. 364, 365, ¶ 6, 284 P.3d 874, 875 (App. 2012). "[A]n order denying intervention is an appealable order and, if the order is reversed, the entire judgment will be reversed." *McGough v. Ins. Co. of N. Am.*, 143 Ariz. 26, 30, 691 P.2d 738, 742 (App. 1984).

**¶22** In its motion, Genex argued that Woodbridge and Thomas obtained summary judgment by omitting a material fact critical to the trial court's determination of whether to approve Thomas's assignment to Woodbridge. Genex asserted that "Thomas had no power to assign the Lottery Payments to Woodbridge because he had already assigned them to Genex." Genex argues that this "misrepresentation" warrants Rule 60(c)(3) relief. We disagree.

**¶23** Assuming for purposes of argument that a nonparty may move for relief from judgment under Rule 60, as discussed above, we have found that Genex has not asserted an interest in the Lottery Payments that justified intervention. Because Genex had no right to intervene, it is not entitled to Rule 60 relief from the trial court's entry of judgment in the

Approval Action. Moreover, we agree with the trial court that omission of the fact that Thomas had entered into an agreement with Genex was not a misrepresentation warranting Rule 60 relief. Accordingly, the trial court did not abuse its discretion by denying this motion. We therefore affirm.

III.     Request for Attorney Fees and Costs

**¶24**     On appeal, Genex requests its costs and attorney fees pursuant to A.R.S. §§ 12-341 and -341.01.A. We deny its request because it did not prevail. We award Thomas and Woodbridge their costs on appeal upon compliance with ARCAP 21.

**CONCLUSION**

**¶25**     For the reasons discussed above, we affirm the trial court's orders denying Genex's motion to intervene pursuant to Rule 24 and motion for relief pursuant to Rule 60.



Ruth A. Willingham · Clerk of the Court
FILED: MJT