FILED

JUL 31 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                             )    BAP No.   NV-12-1512-DKiCo
                                   )
RENO SNAX SALES, LLC,              )    Bk. No.   11-53130-BTB
                                   )
                Debtor.            )
_____)
                                   )
RENO SNAX SALES, LLC,              )
                                   )
                Appellant,         )
                                   )
v.                                 )    **M E M O R A N D U M**[1]
                                   )
HERITAGE BANK OF NEVADA,           )
                                   )
                Appellee.          )
_____)

Argued and Submitted on July 19, 2013
at Las Vegas, Nevada

Filed - July 31, 2013

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

_____

Appearances:    Michael Lehners, Esq. for appellant, Reno Snax
                Sales, LLC; Louis M. Bubala, III, Esq. of
                Armstrong Teasdale LLP for appellee, Heritage Bank
                of Nevada

_____

Before:  DUNN, KIRSCHER and COLLINS,[2] Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] The Hon. Daniel P. Collins, Bankruptcy Judge for the District of Arizona, sitting by designation.

Reno Snax Sales, LLC ("Reno Snax") appeals the bankruptcy court's order overruling its objection to the proof of claim filed by Heritage Bank of Nevada ("Heritage Bank").[3]  We AFFIRM.

**FACTS**

On October 4, 2011, Reno Snax and Coffee & Coolers Etc., Inc. ("Coffee & Coolers"), a related entity, each filed chapter 7 bankruptcy petitions.[4]  Separate trustees were duly appointed, one for Coffee & Coolers ("Coffee & Coolers trustee") and another for Reno Snax ("Reno Snax trustee").  The Reno Snax trustee and the Coffee & Coolers trustee each operated the businesses of Reno Snax and Coffee & Coolers, respectively, postpetition.

Reno Snax and Coffee & Coolers were co-obligors on debt owed to Heritage Bank,[5] which was secured by nearly all of their assets (i.e., inventory, accounts receivable and equipment).  Heritage Bank filed a proof of claim in each of the bankruptcy

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] Reno Snax supplied food and snacks in approximately 500 vending machines in various businesses throughout the Reno-Sparks area.  Coffee & Coolers supplied coffee machines and related products to businesses in the Reno-Sparks area.
Reno Snax and Coffee & Coolers had a common ownership; Ronald and Brenda Bevers were managing members of Reno Snax and officers of Coffee & Coolers.

[5] Reno Snax scheduled Coffee & Coolers as a co-debtor to Heritage Bank.

cases of Reno Snax and Coffee & Coolers.[6]

The Coffee & Coolers trustee soon sold substantially all of Coffee & Coolers' assets to a third-party ("Coffee & Coolers sale") for $322,000 cash ("Coffee & Coolers sale proceeds") under § 363. Four delivery vans and miscellaneous automobiles (collectively, "vehicles") were among the assets sold in the Coffee & Coolers sale.

Out of the Coffee & Coolers sale proceeds, Heritage Bank received $6,881.01 for costs advanced at the beginning of the bankruptcy case. It also received $252,095.19 on its secured claim, the amount remaining after the Coffee & Coolers trustee took $63,023.80, a 20% carveout for the bankruptcy estate arising out of her negotiations with Heritage Bank.

The Reno Snax trustee also sought to sell substantially all of Reno Snax's assets ("Reno Snax sale") to a third-party for $400,000 ("Reno Snax sale proceeds") under § 363. Reno Snax objected to any distribution of the Reno Snax sale proceeds to Heritage Bank ("sale objection"). Reno Snax contended that Heritage Bank was required to comply with the notice provisions of N.R.S. 482.516 when it sold the vehicles as part of the Coffee

---

[6] On March 7, 2012, Heritage Bank filed nearly identical proofs of claim, each in the amount of $1,502,508.49, secured by accounts receivable, inventory and equipment, in both of the bankruptcy cases of Reno Snax and Coffee & Coolers.
On June 13, 2012, Heritage Bank filed amended proofs of claim, both in the amount of $953,733.72, in the bankruptcy cases of Reno Snax and Coffee & Coolers. Heritage Bank amended its proofs of claim to reflect the unsecured portion of the debt that remained after the sale of Reno Snax's and Coffee & Coolers' assets.

3

& Coolers sale.[7]  According to Reno Snax, N.R.S. 482.516 required

[7] N.R.S. 482.516 provides:

1. Any provision in any security agreement for the sale or lease of a vehicle to the contrary notwithstanding, at least 10 days' written notice of intent to sell or again lease a repossessed vehicle must be given to all persons liable on the security agreement.  The notice must be given in person or sent by mail directed to the address of the persons shown on the security agreement, unless such persons have notified the holder in writing of a different address.

2. The notice:

   (a) Must set forth that there is a right to redeem the vehicle and the total amount required as of the date of the notice to redeem;
   (b) May inform such persons of their privilege of reinstatement of the security agreement, if the holder extends such a privilege;
   (c) Must give notice of the holders' intent to resell or again lease the vehicle at the expiration of 10 days from the date of giving or mailing the notice;
   (d) Must disclose the place at which the vehicle will be returned to the buyer or lessee upon redemption or reinstatement; and
   (e) Must designate the name and address of the person to whom payment must be made.

3. During the period provided under the notice, the person or persons liable on the security agreement may pay in full the indebtedness evidenced by the security agreement.  Such persons are liable for any deficiency after sale or lease of the repossessed vehicle only if the notice prescribed by this section is given within 60 days after repossession and includes an itemization of the balance and of any costs or fees for delinquency, collection or repossession.  In addition, the notice must either set forth the computation or

(continued...)

4

strict compliance with its notice provisions; failure to do so would eliminate any deficiency debt owed.  Here, Reno Snax argued, Heritage Bank failed to provide Reno Snax notice pursuant to N.R.S. 482.516.  Reno Snax therefore no longer owed Heritage Bank any deficiency debt.

Reno Snax also objected to Heritage Bank's proof of claim ("claim objection"), repeating its arguments from the sale objection.  It contended that Heritage Bank had no valid claim against it because Heritage Bank was prohibited from recovering any deficiency debt out of the Reno Snax sale proceeds when it failed to comply with N.R.S. 482.516.  Heritage Bank therefore was limited in its recovery to the Coffee & Coolers sale proceeds.

Heritage Bank countered that N.R.S. 482.516 did not apply.  It asserted that N.R.S. 482.516 only applied to secured creditors repossessing and selling their collateral.  Here, the Coffee & Coolers trustee conducted the Coffee & Coolers sale, exercising her right to sell bankruptcy estate assets as representative of the bankruptcy estate.  Because it was the Coffee & Coolers trustee who sold the vehicles and not Heritage Bank, and there was no repossession or sale by Heritage Bank, Heritage Bank was not required to comply with the notice provisions of N.R.S. 482.516.

---

[7](...continued)
estimate of the amount of any credit for unearned finance charges or cancelled insurance as of the date of the notice or state that such a credit may be available against the amount due.

In its reply to Heritage Bank's opposition, Reno Snax bolstered its earlier arguments by referencing certain provisions of Article 9 of the U.C.C., adopted in N.R.S. Chapter 104 ("Article 9").[8] Specifically, Reno Snax contended that repossession of the vehicles was not necessary for the notice requirements of N.R.S. 482.516 to become operative. Under Article 9, no matter who takes possession of and sells collateral, a secured creditor must provide notice, unless it assigns its security interest to another or transfers the collateral, with the transferee agreeing to undertake the secured creditor's duties. Here, Heritage Bank neither transferred its security interest nor transferred the vehicles to the Coffee & Coolers trustee. Yet, Reno Snax argued, Heritage Bank still had a duty to provide notice, even though the Coffee & Coolers trustee sold the vehicles.

At the May 9, 2012 hearing on the Reno Snax sale, Reno Snax withdrew its sale objection in light of its pending claim objection. Reno Snax agreed to Heritage Bank receiving a distribution of the Reno Snax sale proceeds, subject to disgorgement in the event that the bankruptcy court sustained the claim objection.

---

[8] Reno Snax switches between references to a number of provisions in N.R.S. Chapter 104 and U.C.C. Article 9. We refer to these provisions collectively as "Article 9." Reno Snax specifically relies on U.C.C. 9-611(b), essentially incorporated in N.R.S. 104-9611(2). U.C.C. 9-611(b) provides: "Except as otherwise provided in subsection (d), a secured party that disposes of collateral under Section 9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition."

6

Out of the Reno Snax sale proceeds, Heritage Bank received $29,150.53 for costs advanced at the beginning of the bankruptcy case. It also received $296,679.57, the amount remaining after the Reno Snax trustee took $74,169,90, a 20% carveout for the bankruptcy estate arising out of her negotiations with Heritage Bank.

Following a hearing, on July 13, 2012, the bankruptcy court issued an order ("claim order") overruling the claim objection. It determined that Heritage Bank was not required to comply with the notice requirements of N.R.S. 482.516 or Article 9 of the U.C.C. because the Coffee & Coolers trustee sold the assets in her capacity as representative of the bankruptcy estate. The bankruptcy court found that the requirements of those provisions did not apply to the Coffee & Coolers sale because it did not fall "within the statutory provisions of [a] disposition of collateral by a secured party."

Reno Snax timely appealed.[9]

---

[9] Reno Snax later moved to amend the findings in the claim order ("motion to amend"), contending that the bankruptcy court incorrectly found that a chapter 7 trustee's powers of sale under the Bankruptcy Code preempted Heritage Bank's duty to comply with N.R.S. 482.516. Reno Snax argued that Heritage Bank's non-compliance with N.R.S. 482.516 was not excused simply because the Coffee & Coolers trustee sold the vehicles.

At the September 25, 2012 hearing on the motion to amend, the bankruptcy court stated that the "[Coffee & Coolers trustee] was the one who sold the property, not the Bank. [She], by the supremacy clause of the United States and the Bankruptcy Rules[,] [was] not subject to those notice rules. [Therefore, the bankruptcy court was] not reconsidering." Tr. of September 25, 2012 hr'g, 2:12-15.

The bankruptcy court issued an order denying the motion to
(continued...)

7

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in overruling Reno Snax's claim objection?

## STANDARDS OF REVIEW

"An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules), which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error." Veal v. Am. Home Mortg. Srvc., Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011).

Under de novo review, we give no deference to the bankruptcy court's decision. Barclay v. Mackenzie (In re AFI Holding, Inc.), 525 F.3d 700, 702 (9th Cir. 2008). Under the clearly erroneous standard, we give significant deference to the bankruptcy court's decision, only reversing when we have a "definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242 (2001). That is, "[a bankruptcy] court's factual determination is clearly erroneous if

[9](...continued)
amend ("motion to amend order"). Reno Snax did not appeal the motion to amend order.

8

it is illogical, implausible, or without support in the record." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010)(citation omitted).

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

**DISCUSSION**

Reno Snax insists that Heritage Bank was required to comply with the notice provisions of N.R.S. 482.516 and Article 9 of the U.C.C., even though it was the Coffee & Coolers trustee who had taken possession of and sold the vehicles. It presumes that the notice provisions of N.R.S. 482.516 apply. Given the plain language of N.R.S. 482.516, we agree with the bankruptcy court that it is inapplicable.

N.R.S. 482.516 by its terms establishes two triggers for the notice requirements to kick in: 1) repossession and 2) a secured creditor disposing of the subject assets.

Heritage Bank never repossessed the vehicles. As it pointed out, Heritage Bank did not attempt to exercise its state law right of repossession; it did not seek relief from the automatic stay and instead deferred to the Coffee & Coolers trustee in her administration of the bankruptcy estate.

Also, the Coffee & Coolers trustee is not a secured creditor. She does not qualify as a creditor because she has no prepetition claim to property of the bankruptcy estate. See United States v. Lowell, 256 F.3d 463, 466 (7th Cir. 2000) (quoting United States v. Shadduck, 112 F.3d 523, 531 (1st Cir. 1997)).

More importantly, N.R.S. 482.516 runs counter to the schema of the Bankruptcy Code. When a debtor files a chapter 7 bankruptcy petition, <u>all</u> of the debtor's property becomes part of the bankruptcy estate. § 541(a). The property of the bankruptcy estate "includes property in which a creditor has a security interest." <u>Dewhirst v. Citibank (In re Contractors Equip. Supply Co.)</u>, 861 F.2d 241, 244 (9th Cir. 1988)(citing <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 203 (1983)). <u>See also</u> 5 <u>Collier on Bankruptcy</u> ("<u>Collier on Bankruptcy</u>") ¶ 541.05[2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2012) ("[T]he debtor's estate succeeds to the debtor's interest in goods subject to a security interest.").

As representative of the bankruptcy estate, the chapter 7 trustee controls the property of the bankruptcy estate. <u>See</u> § 323(a). <u>See also</u> <u>In re Bunn-Rodemann</u>, 491 B.R. 132, 133 (Bankr. E.D. Cal. 2013)("One of the immediate results of electing to file a Chapter 7 case is that all of the property of the estate is placed under the exclusive control of the Chapter 7 Trustee."). In this capacity, the chapter 7 trustee has the duty to "collect and reduce to money the property of the estate for which such trustee serves . . . as is compatible with the best interests of parties in interest." § 704(a)(1).

"In performing [her] duties of administration and liquidation under the Bankruptcy Code, the trustee represents all the creditors of the [bankruptcy] estate generally. The trustee does not act for the benefit of any particular creditor." 3 <u>Collier on Bankruptcy</u> ¶ 323.02[1]. <u>See also</u> <u>Hall v. Perry (In re Cochise Coll. Park, Inc.)</u>, 703 F.2d 1339, 1357 (9th Cir.

10

1983)(the chapter 7 trustee "is a fiduciary of each creditor of the estate . . . . [She therefore] has a duty to treat all creditors fairly . . . .")(citations omitted).

We agree with Heritage Bank that a chapter 7 trustee's sale of assets under § 363 is not a disposition of collateral by a secured creditor under N.R.S. 482.516 or Article 9. The Coffee & Coolers trustee sold the assets, including the vehicles, as part of her duty in liquidating the property of the bankruptcy estate. And she did so as representative of all the creditors of the bankruptcy estate, not as an agent of Heritage Bank. Cf. Sigmon v. Miller-Sharpe, Inc. (In re Miller), 197 B.R. 810, 815 (W.D. N.C. 1996)(stating that § 544 does not make the trustee an agent for the creditors).

Reno Snax relies on an unpublished state appellate court decision from Michigan, Dearborn Capital Corp. v. Bravo, 2009 WL 3013077 (Mich. App. 2009)("Dearborn"), in arguing that a chapter 7 trustee's sale under § 363, after making a carveout deal with the secured creditor, constitutes a disposition within the meaning of N.R.S. 482.516 and Article 9. Reno Snax insists that Dearborn applies here. We disagree.

In Dearborn, Dearborn Capital Corp. ("DCC") earlier had made a loan to a debtor who later filed for bankruptcy protection; the loan had been secured against certain equipment. The bankruptcy court allowed the sale of the debtor's assets, including the equipment. Some of the sale proceeds were to be held in a segregated account pending a determination of the amount and priority of DCC's secured claim. DCC eventually entered into a settlement under which a portion of its claim was allowed as

11

secured. It was to receive a part of the funds in the segregated account in satisfaction of its secured claim. The balance of its claim was treated as unsecured.

Applying Michigan's version of the U.C.C., the state appellate court determined that the settlement constituted a disposition of a secured interest in collateral. But other than acknowledging the underlying bankruptcy case, the state appellate court did not engage in any analysis or application of the Bankruptcy Code or the Rules. The state appellate court had no evidence as to the adequacy of the notice of the settlement; it simply assumed that the notice of the settlement had not been adequate for Michigan U.C.C. purposes. In this case, Reno Snax concedes that the trustees' sale notices were adequate and fully satisfied all requirements under the Bankruptcy Code and Rules.

We reject the application of Dearborn to the matter before us. Applying Dearborn in the context of this appeal would be a stretch which we are not prepared or obliged to make.

N.R.S. 482.516 and Article 9 may apply only if Heritage Bank had obtained relief from the automatic stay and had exercised its rights concerning its collateral. Otherwise, the Bankruptcy Code precluded any such action. See § 362(a)(3) and (5). Without relief from the automatic stay, Heritage Bank could not exercise its right to repossess and dispose of its collateral.

Because Heritage Bank was not required to comply with the notice provisions of N.R.S. 482.516 and Article 9 in order to assert a claim to recover any deficiency out of the Reno Snax sale proceeds, the bankruptcy court did not err in overruling the claim objection.

12

**CONCLUSION**

For the foregoing reasons, we AFFIRM.